Michael M. LENCH and Thomas
P. Lench, Appellants

v.

ZONING BOARD OF ADJUSTMENT
OF the CITY OF PITTSBURGH and
Eric DiLucente and City of Pitts-
burgh.

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2010.

Decided Jan. 20, 2011.

Thomas J. Michael, Pittsburgh, for appellants.

Joseph A. Fricker, Jr., for appellee Eric DiLucente.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Michael M. Lench and Thomas P. Lench appeal an order of the Court of Common Pleas of Allegheny County (trial court) dismissing their land use appeal. The trial court affirmed the decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board), which granted Eric DiLucente (DiLucente) a *de minimis* variance to increase the height of his home by four inches. Concluding that the trial court did not err, we affirm.

DiLucente owns a house in severe disrepair located at 176 Pius Street in the City of Pittsburgh's "South Side Slopes" neighborhood, which is an R1A–VH district, *i.e.,* a high density residential district. The house is sited on land that slopes steeply upward from Pius Street; accordingly, the ground level at the rear of the house is twelve feet higher than at the front. The front wall of the first level of the house, facing Pius Street, is completely above ground, and the rear of the first level is completely underground.

DiLucente seeks to restore the house and to that end has developed a rehabilitation plan. The plan will replace the existing peaked roof and two gables with a flat roof, thereby creating more usable space on the top floor of the house. The plan would place a garage and entrance on the ground level facing Pius Street. The remaining three levels of the house will be devoted to living spaces. DiLucente's new roof design will raise the overall height of the house by four inches, which exceeds the maximum allowable height. Accordingly, DiLucente applied for a dimensional variance to increase the height of the home.

On November 13, 2008, the Board held a hearing on DiLucente's application, at

which Michael Lench appeared to oppose the requested variance. Lench and his brother own a one-story restaurant, which is a lawful non-conforming use for the R1A–VH district, located next door to DiLucente's house. Lench did not specify a harm that would result from the requested *de minimis* variance, and no other neighbors voiced any objection. Indeed, Brad Palmisiano, representing the South Side Slopes Neighborhood Association, testified that no resident had approached the association with any concerns about DiLucente's plan. Reproduced Record at 79a–80a (R.R. _____). Lench's objections were purely legal in nature.

A building in the R1A–VH district may not be taller than 40 feet and may not have more than three stories. *See* PITTSBURGH ZONING CODE § 903.03.E.2; R.R. 50a.[1] DiLucente's house is 42 feet high. However, this height is a lawful non-conforming dimension because the house was built in 1907, before the 1923 enactment of zoning regulation in Pittsburgh. *See Pyzdrowski v. Board of Adjustment of the City of Pittsburgh*, 437 Pa. 481, 484, 263 A.2d 426, 428 (1970). The focus of Lench's challenge was not the four-inch height increase but, rather, the change to the roof line. Lench contended the new roof line would turn the existing three-and-one-half story house into a four-story house, in violation of the maximum three stories allowed in the district.

The Zoning Code provides that a basement is not a story. *See* PITTSBURGH ZONING CODE § 926(232); R.R. 55a2.[2] Lench

argued that the first level of DiLucente's house was not a basement but a full story because its front wall along Pius Street is entirely above ground. Further, the proposed new roof line will expand the top level of the house from a half-story to a full story, making the house four stories. This would improperly expand the existing non-conforming dimensions of DiLucente's house.

In response, DiLucente argued that the first level of his house met the Zoning Code's definition of a "basement" because the rear of the first level is completely underground. Further, because it will be used as a garage, not for occupancy, the ground floor of his house is a basement and, as such, not a "story" as the term is defined in Section 926(232). Thus, DiLucente argued that upon completion of the renovation, his house will be a three-story house.

The Board granted DiLucente a *de minimis* variance to increase the height of his house by four inches, an amount found trivial when compared to the total height of the house. The Board found the first level of DiLucente's house was a basement, not a story, because there would be no living space on that level. It also found that the proposed reconfiguration of the third story roof would not "affect the light and air of neighboring properties or adversely affect views." R.R. 48a. Replacing the peaked roof would not increase the amount of floor space on the top level, but merely the amount of floor space in which a person could stand. The Board held

---

1. Section 903.03.E.2 includes a chart delineating the height restrictions for the various lot types in the very-high density subdistrict. The maximum height for the R1A subdistrict is listed as "40 ft. (not to exceed 3 stories)." PITTSBURGH ZONING CODE § 903.03.E.2; R.R. 50.

2. Section 926(232) of the Zoning Code states:

> Story means that portion of a building included between the surface of any floor and the surface of the next floor above it, or if there is no floor above it then the space between such floor and the ceiling next above it, *not including cellar or basement.* PITTSBURGH ZONING CODE § 926(232) (emphasis added), R.R. 55a2.

that the grant of the variance would not alter the essential character of the neighborhood; impair the use or development of adjacent property; or be detrimental to public welfare. For these reasons, the Board granted DiLucente a *de minimis* variance.

Lench appealed the Board's decision. The trial court, which did not take additional evidence, affirmed the Board's decision and dismissed Lench's land use appeal. The trial court held that the Board was correct in finding that the first level of DiLucente's house was a basement under the Zoning Code and, further, the Board was justified in granting a *de minimis* variance. Lench now appeals to this Court.[3]

Lench raises three issues before this Court. He argues that the Board erred in several respects: (1) the first level of DiLucente's house is not a basement under the Zoning Code; (2) DiLucente did not meet the requirements for a variance; and (3) DiLucente's request for a variance is not *de minimis* because it will expand the non-conforming stories of the house from three and one-half stories to four stories.

We begin with Lench's argument that the Board erred in its application of the Zoning Code by finding the first level of DiLucente's house to be a basement. The Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, does not expressly apply to zoning ordinances; however, our courts apply its principles to ordinances. *Trojnacki v. Board of Supervisors of Sole-*

*bury Township,* 842 A.2d 503, 509 (Pa. Cmwlth.2004). The words of the ordinance control its meaning and application, and effect must be given to all relevant provisions. *See Beers v. Zoning Hearing Board of Towamensing Township,* 933 A.2d 1067, 1071 (Pa.Cmwlth.2007) ("[An] ordinance must be interpreted, if possible, to give effect to all its provisions.") Where the words of the ordinance are ambiguous, courts construe the ordinance in favor of the landowner. *City of Hope v. Sadsbury Township Zoning Hearing Board,* 890 A.2d 1137, 1143–44 (Pa. Cmwlth.2006). Finally,

> a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *Smith v. Zoning Hearing Bd. of Huntingdon Borough,* 734 A.2d 55, 57 (Pa.Cmwlth. 1999), *pet. for allowance of appeal denied,* 561 Pa. 664, 747 A.2d 904 (1999). Such deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance. *Id.* at 58.

*Id.* at 1143.

The question of whether the first level of DiLucente's house is a story or a basement bears upon Lench's argument that approval of the variance will turn a three and one-half story house into a four story house. Under the Zoning Code, a "story" is defined as

> that portion of a building included between the surface of any floor and the

3. On appeal, our scope of review in a zoning case where the Court of Common Pleas has not taken additional evidence is limited to determining whether the local zoning board committed an error of law or an abuse of discretion. *Segal v. Zoning Hearing Board of Buckingham Township,* 771 A.2d 90, 94 n. 6 (Pa.Cmwlth.2001). A board is considered to have abused its discretion when its findings are not supported by substantial evidence. *Id.* Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See McClintock v. Zoning Hearing Board of Fairview Borough,* 118 Pa.Cmwlth. 448, 545 A.2d 470, 472 (1988) (citing *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983)).

surface of the next floor above it, ... *not including cellar or basement.*

PITTSBURGH ZONING CODE § 926(232) (emphasis added); R.R. 55a2. A "basement" is defined as

a portion of a building partly below ground and having more than one-half (1/2) of its height above the level of the adjoining ground.

PITTSBURGH ZONING CODE § 926(29); R.R. 55a1. The Board found that the ground floor of DiLucente's house was a basement and, as such, not a story. Thus, the rehabilitation plan would leave a three story house in place.

Lench concedes that the ground level of DiLucente's house meets the above-referenced definition of "basement" because the rear of the ground level is completely underground. However, Lench contends that the Zoning Code directs that some basements must be counted as full stories when calculating the number of stories to a particular building, notwithstanding the Zoning Code's definition of "story."

Section 925.07.B of the Zoning Code provides "measurement rules" for determining the height of a building in stories. It states:

In measuring the height of a building in stories the following measurement rules shall apply:

1. A basement, half-story, or penthouse, when designed for dwellings or primary occupancy shall be counted as a full story;

2. *A basement shall be counted a full story when sixty (60) percent or more of the exterior surface of any street wall thereof, extends above the ground directly abutting such exterior street wall.* In determining the percentage of exposed exterior surface of basement street walls, one hundred (100) percent shall be calculated by multiplying the width of such exterior walls by an assumed basement floor elevation of nine (9) feet measured downward from the surface of the first floor above the basement;

3. A balcony or mezzanine shall be counted a full story when its floor area is in excess of one-third (1/3) of the total area of the nearest full floor directly below it.

PITTSBURGH ZONING CODE § 925.07.B.1–3 (emphasis added); R.R. 55a1. Thus, in some circumstances a "basement," *i.e.,* a room below ground, will be counted as a "full story," specifically when that basement is occupied or when more than 60 percent of the basement wall extends above ground at the street.

It is true that the general definition of "story," intended for use throughout the Zoning Code, exempts basements. However, the specific directions set forth in Section 925.07.B must prevail over the exemption for basements provided in Section 926.29 definition of "story." In construing the Zoning Code, we must give effect to the rules for measuring the height of a building.[4] DiLucente's basement is a "full story" because 100 percent of its street wall is above ground. The Board erred in ignoring the directive of Section 925.07.B.2 and holding that the ground level of DiLucente's house was not a "full story."

▮ However, this holding does not advance Lench's argument that a four-inch variance expands the non-conformity of DiLucente's house by taking it from a three and one-half story house to a four story

---

4. It is irrelevant that the basement of DiLucente's house will not be occupied. The measurement rules provide an alternative reason in Section 925.07.B.2 as to why the ground floor of DiLucente's house is a full story.

house. Again, we are guided by the measurement rules in Section 925.07.B. They provide that a "*half story* ... when designed for dwellings or primary occupancy shall be counted as a *full story*." PITTSBURGH ZONING CODE § 925.07.B.1 (emphasis added); R.R. 55a1.

Here, the top story of DiLucente's house is presently designed for dwelling and occupancy. As such, the top floor counts as a "full story" under Section 925.07.B.1, regardless of the amount of usable floor space. The expansion of the usable floor space is of no moment to measuring the height of a building in stories. DiLucente's house is four stories now, and it will be four stories after completion of the renovation. Stated otherwise, the grant of the variance will not expand the non-conforming dimensions of DiLucente's house with respect to the number of stories.

Lench also argues that DiLucente failed to prove the need for a variance. Generally, an applicant requesting a variance must satisfy five factors before a variance can be granted; they are:

1.  That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to the conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

2.  That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

3.  That such unnecessary hardship has not been created by the appellant;

4.  That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

5.  That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

PITTSBURGH ZONING CODE § 922.09.E; R.R. 55a–55a1. The Board did not apply these standards to DiLucente's variance application because it considered the requested variance to be *de minimis*.

A *de minimis* variance may be granted, even where the strict requirements for a variance have not been met, where the variation requested is minor and rigid compliance is not necessary to protect the public policy concerns of the ordinance. *Township of Middletown v. Zoning Hearing Board of Middletown Township*, 682 A.2d 900, 901 (Pa.Cmwlth. 1996). Further, our Supreme Court has explained that it is not necessary to apply the normal standards for a variance, which, in this case, have been set forth in Section 922.09.E of the Zoning Code, where the variance requested is *de minimis*. *Nettleton v. Zoning Board of Adjustment of the City of Pittsburgh*, 574 Pa. 45, 53, 828 A.2d 1033, 1038 (2003) (stating "[t]he *de minimis* zoning doctrine authorizes a variance in the absence of a showing of the unnecessary hardship traditionally required"). The grant of a *de minimis* variance is a matter of discretion with the

local zoning board. *Segal,* 771 A.2d at 95. Notably, the burden on an applicant is at its lightest where the request involves a *de minimis* variance with respect to a dimensional requirement, such as height. *Schomaker v. Zoning Hearing Board of the Borough of Franklin Park,* 994 A.2d 1196, 1203 (Pa.Cmwlth.2010).[5]

We agree with the trial court that the Board did not err in treating DiLucente's application as a request for a *de minimis* variance. Thus, it was not necessary for the Board to make findings on each of the variance standards enumerated in Section 922.09.E.

The Board treated the variance as four inches, using the current 42–foot height as the starting point for measuring the change. There is authority, however, for the view that the current zoning standard should be the base measurement for evaluating whether a requested variance is *de minimis. See King v. Zoning Hearing Board of the Borough of Nazareth,* 76 Pa.Cmwlth. 318, 463 A.2d 505, 506 (1983). In that case, DiLucente's request would be for a variance of two feet, four inches. In either case, the difference is *de minimis.*

■ There are no set criteria for determining what constitutes a *de minimis* variance; this determination depends upon the circumstances of each case. *Bailey v. Zoning Board of Adjustment of the City of Philadelphia,* 569 Pa. 147, 166 n. 21, 801 A.2d 492, 504 n. 21 (2002). In *Pyzdrowski,* 437 Pa. at 489–91, 263 A.2d at 431–32, a change of .7 feet was held *de minimis.* On the other hand, disturbing .35 acres of wetlands to construct a road was held not to be *de minimis. Segal,* 771 A.2d at 91– 95. There is authority that a dimensional change of less than 10 percent will be

treated as *de minimis.* For example, in *Township of Middletown,* 682 A.2d at 901– 02, we held that adding 167 square feet to a building, or 6.76 percent, beyond the dimensional maximum was *de minimis.* In *In Re Appeal of Ressler Mill Foundation,* 132 Pa.Cmwlth. 569, 573 A.2d 675, 676 (1990), we held that a seven foot, or 4.7 percent variance from a 150 foot lot width requirement, was *de minimis.*

■ Whether the variance requested here is expressed as four inches or 28 inches, the decision of the Board to treat DiLucente's request as *de minimis* was appropriate. A four inch variance amounts to a .83 percent deviation from the ordinance's 40 foot height restriction and a .79 percent deviation from the home's existing height of 42 feet. Similarly, when measured from the Zoning Code's 40 foot maximum height restriction the total deviation of two feet four inches, or 28 inches, amounts to a 5.82% variance. These measurements are consistent with our precedent on when a variance is appropriately determined to be *de minimis.*

Section 921.03.A.1 of the Zoning Code provides that a nonconforming structure may be maintained, remodeled, and repaired "without a variance and without special exception approval, provided that such maintenance, remodeling or repair *does not increase the degree of nonconformity.*" Pittsburgh Zoning Code § 921.03.A.1 (emphasis added). The variance granted to DiLucente will expand the degree of the non-conformity with respect to the height of his house by four inches. However, this is not fatal to a *de minimis* variance. As our Supreme Court stated in *Nettleton,* 574 Pa. at 53, 828 A.2d at 1038, the *de minimis* variance doctrine "applies

---

5. In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 258–59, 721 A.2d 43, 47–48 (1998), our Supreme Court held that a dimensional variance requires a lesser quantum of proof.

equally to conforming and nonconforming structures."

DiLucente's house is presently, and has always been, four stories tall. Had DiLucente wished to add a "half story" to the top level of the house without increasing the overall height of the structure he would not have even needed a variance. *See* PITTSBURGH ZONING CODE § 921.03.A. 1. This is because increasing the amount of *usable* floor space on the top level from one-half story to a full story does not increase the degree of nonconformity. What Lench calls a "half-story" has always been considered a "full story" under the Zoning Code, and so expanding the amount of usable floor space is of no moment.

In sum, the Board did not err or abuse its discretion in granting DiLucente a *de minimis* variance. Accordingly, we affirm.

### *ORDER*

AND NOW, this 20th day of January, 2011, the order of the Court of Common Pleas of Allegheny County, dated November 2, 2009, in the above-captioned matter is hereby AFFIRMED.