**John S. MORRELL and Nancy L. Morrell, Appellants**

v.

**The ZONING HEARING BOARD OF the BOROUGH OF SHREWSBURY, Pennsyltucky, LLC and Joel Zaldivar.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2010.

Decided April 4, 2011.

Douglas H. Gent, Hanover, for appellants.

David A. Jones, II, York, for appellee Joel Zaldivar.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

John S. Morrell and Nancy L. Morrell (Objectors) appeal from the March 24,

2010, order of the Court of Common Pleas of York County (trial court), affirming the October 8, 2009, decision of the Shrewsbury Borough Zoning Hearing Board (Board), which granted Pennsyltucky LLC's application for a special exception to operate a restaurant. We affirm.

Pennsyltucky LLC owns real property located at 14 North Main Street, Shrewsbury Borough, York County, Pennsylvania (Property) in a village zoning district. On July 16, 2009, Pennsyltucky applied to the Board for a special exception to operate a restaurant [1] with a business office pursuant to section 205.3(b) of the Ordinance, which permits the use of the property as a retail store or personal service business by special exception. The Board and respective parties reviewed the application pursuant to section 205.3(a) of the Ordinance, which provides as follows:

*Uses by Special Exception:* The following principal uses shall be permitted as Special Exceptions when authorized by the Zoning Hearing board. The Zoning Hearing Board shall hear and decide requests for such use according to criteria established in PARTS V and VI of this Ordinance.

a) Eating establishment.

On August 13, 2007, the Board held a hearing at which the proposed lessee of the Property, Joel Zaldivar (together with Pennsyltucky, "Applicant") appeared before the Board. Zaldivar testified that he wanted to open a restaurant specializing in handmade sausages, cured and smoked meats, cheese, and bread that would be sold as part of a menu and for carry-out.

---

1. In 1993, the Board granted another applicant a special exception to operate an eating establishment on the Property. The special exception provided that the restaurant could not consist of more than thirty seats and prohibited grilling or frying. Without authorization, the former restaurant subsequently expanded the seating capacity to fifty-five seats and broadened its menu to include full course dinners, which required grilling and frying. The restaurant closed in July of 2004, and the Property has not been used as a restaurant since that time.

Smoking would take place in an indoor electric smoker that would be vented through the roof. The restaurant would offer breakfast and lunch from 7:30 a.m. to 4:00 p.m. and dinner, by reservation, on Fridays and Saturdays, with the last seating at 8:30 p.m. and the restaurant closing by 11:00 p.m. Zaldivar proposed constructing a ten by twelve patio at the rear of the property for outdoor dining and a stick-built addition for indoor dining. Altogether, the restaurant would accommodate up to fifty-five patrons. Zaldivar testified that he would install a fire suppression system, a new electrical system, and appropriate drainage as required to comply with the Borough's building code. Zaldivar also presented a letter of support signed by twenty-one of the neighboring property owners, including both adjoining property owners. Fifteen of the twenty-one property owners who signed the letter also appeared before the Board to testify in support of the proposed use of the Property as a restaurant.

Objectors[2] appeared before the Board in opposition to the proposed use of the Property as a restaurant. Objectors testified that the restaurant is not set back fifteen feet from adjoining properties as required by section 607(b) of the Ordinance which, in pertinent part, provides that "all buildings must be set back at least 15 feet from any property line and 15 feet from a street line." Objectors also expressed their belief that the proposed use of the Property presents an increased risk of fire, which is contrary to the public health, safety and welfare. Finally, Objectors asserted that the restaurant will disrupt the peace and quiet enjoyment of

their home, which is located directly behind the Property.

By decision dated October 8, 2009, the Board granted Applicant a special exception to operate the restaurant, concluding that Applicant met all of the general and special standards required for an eating establishment. (Reproduced Record (R.R.) at 2a.) The Board acknowledged that the Property did not meet the setbacks required by section 607(b) of the Ordinance, but concluded that the preexisting nonconforming setbacks established on the lot were at least equal to the average setbacks of existing adjacent properties as required to comply with section 406 of the Ordinance.[3] Section 406 of the Ordinance provides the following for lots of record located in any of the Borough's zoning districts:

On a lot held in single and separate ownership on the effective date of this Ordinance or any amendment thereto, which does not fulfill the regulations for the minimum lot area and/or lot width for the district in which it is located, a building may be erected, altered and used and *the lot may be used for a conforming (permitted) use providing setbacks established on the lot are at least equal to the average setbacks on existing adjacent properties.*

(emphasis added.) The Board also observed that the Property has an area of 8,712 square feet and a width of 33 feet, which does not satisfy the minimum area and width requirements of section 205.4 of the Ordinance. Section 205.4 of the Ordinance provides as follows:

*Lot Area and Width:* Lot area and lot width not less than the following dimen-

---

**2.** Mr. Morrell is a member of the Board, but recused himself in order to oppose Applicant's request for a special exception.

**3.** Although neither party submitted evidence concerning the average side setbacks of existing adjacent properties, Objectors do not argue that the criteria of section 406 are not met.

sions shall be provided for each dwelling unit and/or principal use hereafter established in this district:

Minimum Lot Area—9,000 sq. ft.

Minimum Lot Width—50 ft.

However, the Board concluded that the restaurant's setbacks were at least equal to the setbacks on adjoining properties as required by section 406 of the Ordinance, which applies to lots that do not "fulfill the regulations for the minimum lot area and/or lot width for the district in which [they are] located." Finally, the Board concluded that the restaurant did not present a risk of fire or disquiet any greater than similarly situated establishments located in the Village district.

■ Objectors timely appealed to the trial court, which affirmed the Board's decision. The trial court observed that, although the Board did not take testimony concerning whether the building's setbacks are equal to those of adjoining properties, Objectors did not present evidence to the contrary; therefore, the trial court concluded that the Board properly applied section 406 of the Ordinance. In addition, the trial court held that the setbacks on the Property are preexisting dimensional nonconformities that are permitted to continue pursuant to section 407.1(b) of the Ordinance, which provides as follows:

b) Except as otherwise provided in this Section, any dimensional nonconformities existing at the date of the adoption of this Ordinance may be continued.

Objectors now appeal to our Court.[4]

■ A special exception is a use that is expressly permitted by the zoning ordinance, absent a showing of a detrimental effect on the community. *Manor Healthcare Corp. v. Lower Moreland Township*

*Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). The applicant for a special exception has the burden to demonstrate that the proposed use satisfies the objective requirements of the ordinance. *Id.* Once the applicant has met his or her burden, a presumption arises that the proposed use is consistent with the health, safety, and general welfare of the community. *Id.* The burden then shifts to the objectors to demonstrate that the proposed use will have a detrimental effect on the health, safety, and general welfare of the community. *Id.*

Pursuant to section 205.3(a) of the Ordinance, eating establishments are permitted as a principal use in the Village district by special exception, subject to Parts V and VI of the Ordinance. The applicable provision of Part V of the Ordinance is section 503.6, which provides that an applicant for a special exception has the burden to demonstrate the following general criteria by a preponderance of the evidence:

a) The proposed use, including its nature, intensity and location, is in harmony with the orderly and appropriate development of the district; and

b) That adequate water supply, sewage disposal, storm drainage and fire and police protection are or can be provided for the use; and

c) That the use of adjacent land and buildings will not be discouraged and the value of adjacent land and buildings will not be impaired by the location, nature and height of buildings, walls and fences; and

d) That the use will have proper location with respect to existing or future streets giving access to it, and will not create traffic congestion or cause industrial or

---

4. When the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Callowhill Center Associates, LLC v. Zoning Board of Adjustment,* 2 A.3d 802 (Pa.Cmwlth.2010).

commercial traffic to use residential streets; and

e) *That the specific standards set forth for each particular use for which a special exception may be granted have been met.*

(emphasis added.) While the trial court found that Applicant met all of the requirements set forth in section 503.6 of the Ordinance, Objectors have challenged section 503.6(e).

Part VI of the Ordinance contains section 607, which provides the following specific criteria for eating establishments:

a) The use must have access on an arterial or collector street as designated in the Borough Comprehensive Plan.

b) Appearance should be harmonious with adjoining properties. This feature includes but is not limited to: landscaping, height control, sign control, building coverage and architectural controls. *In addition, all buildings must be set back at least 15 feet from any property line and 15 feet from a street line.*

c) Buffers and screen shall be provided as necessary to adequately protect neighboring properties. This includes but is not limited to fences, walls, plantings, and open spaces.

d) The use shall be allowed to operate only between the hours of 7 a.m. and 11 p.m., seven days a week. All deliveries and pick-ups must occur within said hours of operation.

(emphasis added.)

■■■ Objectors assert that the Board erred in applying section 406 ("Lots of Record") of the Ordinance to circumvent the more specific fifteen-foot side setback required for an eating establishment in the Village district under section 607(b) ("Eating Establishment") of the Ordinance. Objectors also aver that the Board erred in applying section 406 to circumvent the 9,000 square foot area and 50 foot width requirements for a new principal use in the Village district as set forth in section 205.4 of the Ordinance, because the prior nonconforming use of the property as a restaurant was abandoned.[5] In support of these assertions, Objectors contend that specific provisions of the Ordinance applicable to eating establishments in the Village district prevail over general provisions of the Ordinance applicable to permitted uses in any of the Borough's zoning districts.[6] However, the language of section 406 of the Ordinance is clear that it applies to lots that do not fulfill the width or area regulations for the zoning district where they are located.

■■■ Although the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–

**5.** Section 407.5 of the Ordinance defines abandonment as follows:

A nonconforming use shall be adjudged as abandoned when there occurs a cessation of any such use or activity by an apparent act or failure to act on the part of the tenant or owner to reinstate such use within a period of one year from the date of cessation or discontinuance. Such use shall not thereafter be reinstated and the structure shall not be reoccupied except in conformance with this Ordinance.

Because the Property has not been used as a restaurant since the former restaurant, Peppercorns, closed in July of 2004, the prior nonconforming use of the Property as an eating establishment was abandoned and the proposed use of the property is, therefore, a new principal use.

**6.** Before the Board and the trial court, Objectors also asserted that the proposed use of the Property as a restaurant presents a risk of fire and disquiet to neighboring properties. However, Objectors have not raised this issue before our Court and, therefore, have waived it. *See Nabisco Brands, Inc. v. Workers' Compensation Appeal Board (Tropello)*, 763 A.2d 555, 558 n. 6 (Pa.Cmwlth.2000) (an issue must be raised at every stage in the proceeding; otherwise it is waived.)

1991, does not expressly apply to zoning statutes, our Court applies its principles in construing ordinances. *Lench v. Zoning Board of Adjustment of City of Pittsburgh*, 13 A.3d 576 (Pa.Cmwlth.2011). Accordingly, a zoning ordinance must be interpreted to give meaning to all of its provisions. *Id.* Further, as the party charged with administering a zoning ordinance, a zoning hearing board possesses unique knowledge and expertise; therefore, a zoning hearing board's interpretation of its own ordinance is afforded great weight and deference. *Id.*

Section 406 of the Ordinance provides that buildings on lots located in any of the Borough's districts that were held in ownership on the effective date of the Ordinance may be used for a permitted use even if they do not meet the area and width requirements for the district where they are located, provided that the setbacks established on the lot are not less than the average setbacks on adjacent properties, a criteria not raised on appeal. Section 205.3(a) of the Ordinance allows eating establishments as a permitted use in the Village district. Moreover, as the trial court observed, section 407.1(b) of the Ordinance expressly permits the continuation of preexisting dimensional nonconformities in all of the Borough's districts. Neither party disputes that the area, width, and setbacks established on the Property are dimensional nonconformities or that these nonconformities preexisted the enactment of the Ordinance.

Accordingly, we discern no error or abuse of discretion in the Board's construction of the applicable Ordinance provisions to grant a special exception in this case. Because the setbacks on the Property are preexisting dimensional nonconformities that are permitted to continue

pursuant to section 407.1(b) of the Ordinance, and because the Board found, pursuant to section 406 of the Ordinance, that the setbacks established on the Property are not less than the average setbacks of existing adjacent properties,[7] the Board did not err in granting the special exception.

For the foregoing reasons, we affirm.

### *ORDER*

AND NOW, this 4th day of April, 2011, the order of the Court of Common Pleas of York County, dated March 24, 2010, is hereby affirmed.

---

**7.** Objectors have not asserted that the setbacks established on the Property are not less than the average setbacks of adjacent properties.