IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Appeal of Chestnut Hill Community Association, Chestnut Hill Baptist Church, James Bruno, Maureen Pie-Bruno, Eileen Sisle, Kenneth Schotsch, and Devon Cargerry | : : : : : : : | |
| v. | : : | No. 1034 C.D. 2022 Argued: April 9, 2024 |
| City of Philadelphia Zoning Board of Adjustment and 10 Bethlehem Pike Property Owner, LLC | : : : : | |
| Appeal of: 10 Bethlehem Pike Property Owner, LLC | : : | |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE STACY WALLACE, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED: June 4, 2024

        10 Bethlehem Pike Property Owner, LLC (Owner) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) granting the land use appeal of Chestnut Hill Community Association, Chestnut Hill Baptist Church, James Bruno, Maureen Pie-Bruno, Eileen Sisle, Kenneth Schotsch, and Devon Cargerry (collectively, Objectors). Specifically, the trial court held that the City of Philadelphia (City) Zoning Board of Adjustment (Zoning Board) erred in affirming the zoning permit issued to Owner by the City Department of Licenses and Inspections (Department of L&I) because Owner's project will not comply with the street line setbacks required by law. On appeal, Owner argues that the trial court

erred in its interpretation of the front yard setback requirements set forth in the Philadelphia Zoning Code.[1]  Upon review, we reverse the trial court.

## Background

At issue is a corner parcel of land at 10 Bethlehem Pike in the City (Property), which is located in the Neighborhood Commercial Mixed-Use-2 District (CMX-2 District).  As a corner lot, the Property fronts on Bethlehem Pike and on Summit Street.  Previously operated as a gas station, the Property has been vacant for some time.  Owner purchased the Property, demolished the existing structures, and applied for a by-right zoning permit to construct a 45-foot-tall building for mixed commercial and residential use, as authorized in the CMX-2 District.  On April 26, 2021, the Department of L&I issued the zoning permit allowing for

> [r]etail sale of food, beverages and groceries from basement thr[ough] first floor with multi-family household living (thirty-three (33) dwelling units) (five (5) units using green roof bonus (as per [Zoning] Code Section 14-602(7) and 14-602(4)(a)[8](.C); six (6) units using moderate income density bonus and maximum twenty-two (22) units allowed as per lot size) from second (2nd) floor through fifth (5th) floors with twelve (12) 1A class bicycle spaces in an accessible route and with eight (8) underground parking spaces including with one (1) van accessible space.

Reproduced Record at 18a (R.R.__).  The zoning permit approved the "size and location" of the project "as shown in the application."  R.R. 17a.

Objectors appealed to the Zoning Board.  Objectors maintained that Section 14-701(1)(c) of the Zoning Code requires a 35-foot front yard setback along

---

[1] *See* Philadelphia County, Pa., Zoning Code, *as amended* (2012) (ZONING CODE).

2

both Bethlehem Pike and Summit Street.[2] However, Owner's zoning plans provided no setbacks along either street frontage.

Objectors argued that because the Property is a corner lot facing two streets, it has two front yards and two setbacks from the street line. The Zoning Code provides that "[w]here *any block frontage* on one side of a street is divided into two or more districts, no structure shall be erected nearer to the street line than is permitted under the regulations for the district that covers the *largest percentage of the street frontage on that block face*." ZONING CODE, §14-701(1)(c); R.R. 300a (emphasis added). The Property sits on a block that is bounded by Bethlehem Pike, Summit Street, Prospect Avenue, Evergreen Avenue, and Evergreen Place. While the Bethlehem Pike block frontage lies entirely within the CMX-2 District, the Summit Street block frontage is divided into three zoning districts: CMX-2, Residential Single-Family Attached-2 (RSA-2), and Residential Single-Family Detached-1 (RSD-1). The RSD-1 District "covers the largest percentage" of the Summit Street block face, and this district requires a 35-foot front yard setback. ZONING CODE, §14-701(1)(c); R.R. 300a. Objectors argued that under Section 14-701(1)(c), a 35-foot front yard setback applied not only to the Summit Street frontage of the Property but also to the Bethlehem Pike frontage.

At the hearing, Objectors presented the testimony of James Bruno and Maureen Pie-Bruno, who live in a house on Summit Street adjacent to the Property. They opposed the zoning permit because it allowed only a five-foot side yard setback from the property line they share with Owner. Notes of Testimony, 11/30/2021, at 31 (N.T.__); R.R. 160a.

---

[2] Objectors also raised challenges to the dimension of the project's roof decks and the project's outdoor lighting plan. The Zoning Board rejected Objectors' challenges, and Objectors did not appeal.

Objectors also presented testimony of Daniel Piotrowski, Board Chairman of the Chestnut Hill Baptist Church on Bethlehem Pike, located on the other side of the Property. Piotrowski testified that the church was founded in 1834 and has been designated a historic building by the City's Historical Commission. Piotrowski opposed the issuance of the zoning permit because the church "was built before there was electricity," and the proposed building "would block the light coming in from the windows." N.T. 34; R.R. 163a. Piotrowski believed that the appropriate side yard setback was 35 feet, not the 10 feet that was approved.

Owner addressed Objectors' legal challenge. First, the Property is located entirely in the CMX-2 District, and this district does not require any front yard setback. Second, the Zoning Code provides that where a property is a corner lot facing two streets, the Planning Commission may designate one street frontage as the "primary frontage." ZONING CODE, §14-701(1)(d)(.4)(.a); R.R. 301a. Here, the Planning Commission has designated Bethlehem Pike as the Property's primary frontage, and it is governed by the CMX-2 District regulations. In short, the Property was not required to have a front yard setback on either Bethlehem Pike or Summit Street.

Owner presented expert testimony of Janice Woodcock, architect and former director of the City Planning Commission. Woodcock was engaged by Owner to investigate Objectors' legal position and "to determine whether . . . the permits were valid as issued[.]" N.T. 36; R.R. 165a. She explained that the Planning Commission is authorized under the Zoning Code to determine street frontage, and it did so properly in the instant case. Woodcock testified that the Property was located in "a very important commercial corridor in Chestnut Hill," which "has to have density in order to take advantage of the infrastructure and transit." N.T. 39;

4

R.R. 168a. She opined that Owner's project was consistent with the Planning Commission's policies.

Owner also presented the testimony of Zachary Frankel, its principal, and Sergio Coscia, its project architect. Both testified that the Project was designed to comply with all applicable zoning requirements so that Owner would secure a by-right zoning permit.

The Zoning Board denied Objectors' appeal. In rejecting their setback arguments, the Zoning Board concluded that the Planning Commission properly designated Bethlehem Pike as the "primary frontage." Zoning Board Decision, Conclusion of Law No. 15(iii)-(iv). Because the Property was zoned CMX-2 and fronted on Bethlehem Pike, a block where all properties are in the CMX-2 District, a "front yard setback on its Summit Street frontage" was not required. *Id.*, Conclusion of Law No. 15(viii).

Objectors appealed to the trial court, which reviewed the Zoning Board's decision without receiving additional evidence. By order of September 13, 2022, the trial court reversed the Zoning Board's decision.

The trial court agreed with Objectors that under Section 14-701(1)(c) of the Zoning Code, the setback requirements for the RSD-1 District governed because the majority of the properties in the block facing Summit Street are located in the RSD-1 District. Because the Property had more than one street frontage, the 35-foot front yard setback not only applied to the Property's frontage on Summit Street but also on Bethlehem Pike.

The trial court concluded that the Planning Commission lacked authority to designate Bethlehem Pike as the Property's primary frontage to "purposefully exclude the Property's existing frontage on Summit Street that had

5

been subject to unambiguous Zoning Code restrictions." Trial Court Op. at 2. Even so, the Planning Commission's primary frontage designation could not "exclude the reality that there are two street facing frontages to this Property." *Id*. at 10. The word "primary" does not mean "only." *Id*. In short, because the Summit Street frontage encompassed three separate zoning districts and is predominantly residential, a 35-foot front yard setback governed both frontages of the Property.

Owner appealed to this Court.[3]

**Appeal**

On appeal, Owner raises three issues, which we combine into one for clarity. Owner argues that the trial court erred in its interpretation of the Zoning Code, which specifies that for corner lots fronting more than one street, the "front yard requirements *of the zoning district* shall apply to those street frontages[.]" ZONING CODE, §14-701(1)(d); R.R. 300a (emphasis added). Here, the Property is a corner lot located in the CMX-2 District, and this district does not require any front yard setback. Owner contends that the trial court erred in relying on Section 14-701(1)(c) because the "more specific" provision of the Zoning Code, *i.e*., Section 14-701(1)(d), governs. It mandates "that corner lots are subject only to the front yard requirements of their zoning district[.]" Owner Brief at 18.

In further support of its position, Owner observes that to the extent the Zoning Code is unclear, it must be resolved in favor of property owners. Owner Brief at 19 (citing *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015)). Further, the Zoning Board's interpretation of

---

[3] "Where the trial court receives no additional evidence on appeal from a zoning hearing board's decision, an appellate court's standard of review is to determine whether the board committed an abuse of discretion or an error of law." *Harrisburg Gardens, Inc. v. Susquehanna Township Zoning Hearing Board*, 981 A.2d 405, 410 (Pa. Cmwlth. 2009).

the Zoning Code is entitled to deference.[4]  Imposition of a residential setback requirement to a commercially zoned property makes no sense and would frustrate the City's intentions with respect to commercial development.  Indeed, the evidence established that "good urban design practice" requires that commercial buildings not be set back from their frontage in order to be "accessible to pedestrians and bring[] life to the sidewalk[.]"  N.T. 73; R.R. 202a.  Notably, the owners of the neighboring properties expressed concern only about the side yard setbacks, not the front yard setbacks.

In response, Objectors argue that the trial court did not err.  The Zoning Board's interpretation of the Zoning Code cannot be squared with the plain terms of the ordinance and, thus, "carries little weight."  Objectors Brief at 14 (citing *Azoulay v. Philadelphia Zoning Board of Adjustment*, 194 A.3d 241, 249 (Pa. Cmwlth. 2018)).  The Zoning Code states that where the "block frontage on one side of a street is divided into two or more districts," "the regulations for the district that covers the largest percentage of the street frontage on that block face" govern. ZONING CODE, §14-701(1)(c); R.R. 300a.  Here, the largest percentage of frontage on the Summit Street block lies in the RSD-1 District, and it requires a 35-foot setback.  Without this zoning requirement, structures will not line up neatly on a block but appear, rather, something like a hair comb with broken teeth.

Objectors concede that the Planning Commission may designate the primary frontage, but the Property still has two street frontages.  That Bethlehem

---

[4] Owner also challenges the trial court's assertion that even if the Zoning Board's determination on the front yard setback were correct, a remand to the Zoning Board was required to evaluate Objectors' other challenges to the zoning permit.  This was error because Objectors neither argued nor presented evidence on their objections to the roof deck or the outdoor lighting plan before either the Zoning Board or the trial court.  Those issues are waived.  Objectors do not defend this aspect of the trial court's decision.

7

Pike is the primary frontage does not exempt the Summit Street frontage from the front yard setback requirements of Section 14-701(1)(c).

Objectors direct the Court to Section 14-602(4)(a)[3] of the Zoning Code, titled "Notes for Table 14-602-2." It states as follows:

> [3] In the CMX-2 and CMX-2.5 districts, in order to promote active uses at the street level, buildings must contain a use other than residential and other than parking along one hundred percent (100%) of the ground floor frontage and within the first 30 ft. of building depth, measured from the front building line. *If the property is bounded by two or more streets, only the primary frontages as designated in §14-701(1)(d)(.4) (Primary Frontage) shall be subject to this requirement.*

ZONING CODE, 14-602(4)(a)[3]; R.R. 295a (emphasis added).[5] This provision addresses the ground floor use of a commercial project in the CMX-2 District, but it does not state that a primary frontage designation determines the front yard setback. Accordingly, Objectors contend that the Planning Commission's authority to designate a primary frontage for properties located in the CMX-2 District is "only for the purposes of defining the location of commercial uses; not for the purpose of determining yard depth or setbacks." Objectors Brief at 41.

---

[5] Objectors' reliance on Section 14-602(4)(a)[3] is somewhat confusing and, in any case, misplaced. Section 14-602(4)(a)[3] addresses "*uses* allowed in commercial districts" specified in Table 14-602-2. ZONING CODE, Table 14-602-2; R.R. 295a-99a (emphasis added). As such, Section 14-602(4)(a)[3] does not address the dimensional requirements for corner lots. The dimensional standards for commercial districts are specified in Table 14-701-3 under Chapter 14-700 of the Zoning Code. *See* ZONING CODE, Chapter 14-700 ("Development Standards"); R.R. 330a-18a. Table 14-701-3 is clear that there is no front yard depth requirement in the CMX-2 District.

8

**Analysis**

As an initial matter, we note that "[t]he rules of statutory construction apply to ordinances as well as statutes." *In re Holtz*, 8 A.3d 374, 378 (Pa. Cmwlth. 2010). The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review. *Northampton Area School District v. Zoning Hearing Board of Township of Lehigh*, 64 A.3d 1152, 1157 (Pa. Cmwlth. 2013). The primary objective of statutory interpretation is to determine the intent of the legislation. Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921. A statute's plain language generally provides the best indication of legislative intent, and, thus, statutory construction begins with examination of the text itself. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007).

With respect to zoning matters, "[u]ndefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Caln Nether Company, L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). *See also Lench v. Zoning Board of Adjustment of City of Pittsburgh*, 13 A.3d 576, 579 (Pa. Cmwlth. 2011) (ambiguity in the zoning ordinance construed in favor of landowner). A zoning ordinance is ambiguous if the pertinent provision is susceptible to more than one reasonable interpretation, *Adams Outdoor Advertising, L.P. v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006), or when the language is "vague, uncertain, or indefinite." *Barasch v. Pennsylvania Public Utility Commission*, 532 A.2d 325, 332 (Pa. 1987).

Finally, it is well settled that "a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference . . . . Such

9

deference is appropriate because a zoning hearing board, as the entity charged with administering a zoning ordinance, possesses knowledge and expertise in interpreting that ordinance." *Risker v. Smith Township Zoning Hearing Board*, 886 A.2d 727, 731 (Pa. Cmwlth. 2005) (internal citation omitted).

With these principles in mind, we turn to the issue on appeal, which is entirely one of construction of the provisions of the Zoning Code that relate to front yard setback requirements.

Section 14-701(1)(d) of the Zoning Code sets forth the dimensional requirements "for [l]ots with [m]ultiple [s]treet [f]rontages." ZONING CODE, §14-701(1)(d); R.R. 300a.[6] It states, in pertinent part, as follows:

---

[6] Section 14-701 of the Zoning Code, titled "Dimensional Standards," provides, in pertinent part, as follows:

(1) **General Provisions.**

    (a) **Applicability.**

        All primary and accessory structures must comply with the dimensional standards in this (§14-701). These dimensional standards may be further limited or modified by other applicable sections of this Zoning Code. General rules for measurement are in §14-202 (Rules of Measurement).

        . . . .

    (c) **Front Yard Depths for Zone Blocks with More than One Zone.**

        Where any block frontage on one side of a street is divided into two or more districts, *no structure shall be erected nearer to the street line than is permitted under the regulations for the district that covers the largest percentage of the street frontage* on that block face.

    (d) **Requirements for Lots with Multiple Street Frontages.**

        For a lot fronting on more than one street, each street frontage shall be considered a front. The front yard requirements of the zoning district shall apply to those street frontages and the following side yard, rear yard, and primary frontage requirements shall apply. In all circumstances, the requirements for minimum open area and maximum occupied area remain the same. []

10

(.1) **Properties Bounded by Two Streets.**

When a property is bounded by two streets:

(.a) That constitute a corner, one of the remaining lot lines shall be deemed a side and the other remaining lot line shall be deemed a rear. Where the determination of side and rear lot lines is necessary for L&I to approve or deny a zoning permit application, the Commission shall determine the side and rear lot lines based on the orientation of the lot, orientation of the primary structure, orientation of the structures on adjacent lots, orientation of structures with frontage on the same blockface, the street type designation of the bounding streets, or any additional criteria stated in the regulations of the Commission for the purposes of clarifying or implementing this determination.

(.b) That are opposite each other, the remaining two property lines shall be considered sides and the side yard requirements of the zoning district shall apply to the remaining lot lines. The rear yard requirements of the zoning district shall not apply.

. . . .

(.4) **Primary Frontage.**

(.a) When necessary to apply certain provisions of this Zoning Code, properties bounded by two or more streets shall have at least one street frontage designated as a primary frontage by the Commission.

(.b) The Commission shall determine which street frontages shall be designated as a primary frontage based on the orientation of the primary structure, the orientation of the structures on adjacent lots, the orientation of other structures with frontage on same block face, the street type designation of the bounding street, or any additional criteria stated in the regulations of the Commission for the purposes of clarifying or implementing this determination.

(.c) The primary frontage designation shall only apply to those provisions of this Zoning Code where specified, otherwise the front yard and front setback requirements of this Zoning Code shall apply.

ZONING CODE, §14-701(1); R.R. 300a-01a (emphasis added).

11

> For a lot fronting on more than one street, each street frontage shall be considered a front. *The front yard requirements of the zoning district shall apply to those street frontages* and the following side yard, rear yard, and primary frontage requirements shall apply.

ZONING CODE, §14-701(1)(d); R.R. 300a (emphasis added). Because the Property fronts on two streets, Bethlehem Pike and Summit Street, "each street frontage" is a "front." ZONING CODE, §14-701(1)(d); R.R. 300a. The front yard requirements of the zoning district of the "lot fronting on more than one street" shall apply to those street frontages. ZONING CODE, §14-701(1)(d); R.R. 300a. Here, "each street frontage" of the Property is located in the CMX-2 District, and it requires no front yard setback, as the parties concede. *See* ZONING CODE, Table 14-701-3; R.R. 309a.

Section 14-701(1)(c), upon which the trial court relied, is titled "Front Yard Depths for Zone Blocks with More than One Zone." ZONING CODE, §14-701(1)(c); R.R. 300a. It states that "[w]here any block frontage on one side of a street is divided into two or more districts, no structure shall be erected nearer to the street line than is permitted under the regulations for the district that covers the largest percentage of the street frontage on that block face." ZONING CODE, §14-701(1)(c); R.R. 300a. A "block frontage" is defined as "[t]he distance along any street line between the nearest streets intersecting it." ZONING CODE, §14-203(40); R.R. 285a. A "block face" is defined as "the edge of a block of lots facing a publicly dedicated street and that is located between two intervening streets intersecting the street in front of the lots." ZONING CODE, §14-203(39); R.R. 284a.

Section 14-701(1)(c) ensures that buildings placed along a street line up with one another for aesthetic harmony. It applies to the "block frontage" on Summit Street but not to Bethlehem Pike, which is governed by a single zoning district. There is no basis in the Zoning Code for applying the rules for the Summit

12

Street block frontage to a different zone block on Bethlehem Pike. Each block frontage must be separately evaluated. Stated otherwise, Section 14-701(1)(c) cannot be extended from one block frontage, *i.e.*, Summit Street, to another block frontage, *i.e.*, Bethlehem Pike. To do so would disturb the lineup of buildings on Bethlehem Pike.

More importantly, Section 14-701(1)(c) has no effect to the extent it conflicts with Section 14-701(1)(d). The latter provision is quite clear that "a lot fronting on more than one street" will be subject to the front yard depth requirements for "the zoning district" in which the lot is located. ZONING CODE, §14-701(1)(d); R.R. 300a. Here, the Property is located in the CMX-2 District, which imposes no front yard setback requirements.

Objectors have offered no way to reconcile the two above-cited provisions of the Zoning Code. Objectors simply ignore Section 14-701(1)(d). Section 1933 of the Statutory Construction Act of 1972 states:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. *If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.*

1 Pa. C.S. §1933 (emphasis added). In the absence of reconciliation between two legislative provisions, the specific controls the general.

Section 14-701(1)(c) is a general provision that applies to multiple lots located along a block face. By contrast, Section 14-701(1)(d) applies to a single lot, *i.e.*, a corner lot that faces two streets. As such, it is a special provision that must be construed as an "exception to the general provision." 1 Pa. C.S. §1933. Section 14-

13

701(1)(c) governs the dimensional standards for a corner lot and supersedes Section 14-701(1)(c).[7] As a corner lot located entirely in the CMX-2 District, the Property does not need to have a front yard setback along either Bethlehem Pike or Summit Street. The Board did not err in denying Objectors' appeal.

Nevertheless, the Zoning Board's conclusion that the front yard setback requirements apply only to the primary frontage of the Property designated by the Planning Commission is erroneous.

Section 14-701(1)(d) states that "the following side yard, rear yard, and primary frontage requirements," set forth in subsection (d)(.1) through (d)(.4), "shall apply" to the "lot fronting on more than one street." ZONING CODE, §14-701(1)(d); R.R. 300a. The Zoning Code authorizes the Planning Commission, "when necessary to apply certain provisions of this Zoning Code," to designate "at least one street frontage" as "a primary frontage" for "properties bounded by two or more streets." ZONING CODE, §14-701(1)(d)(.4)(.a); R.R. 301a. However, that "primary frontage designation shall only apply to those provisions of this Zoning Code where specified[.]" ZONING CODE, §14-701(1)(d)(.4)(.c); R.R. 301a.

The Planning Commission has the authority to designate primary frontage of a property fronting on more than one street "[w]*hen necessary to apply certain provisions of this Zoning Code*[.]" ZONING CODE, §14-701(1)(d)(.4)(.a); R.R. 301a (emphasis added). However, the Planning Commission did not identify those "provisions of this Zoning Code" that necessitated naming Bethlehem Pike as the primary frontage of the Property. Objectors argue that, as a result, the Planning

---

[7] Section 14-701(1)(d) was enacted by ordinance of December 8, 2015, Bill No. 150766. While Section 14-701(1)(c) was amended in March 2021 and again in April 2021, the amendments were not substantive. It is reasonable to infer that the legislative body intended Section 14-701(1)(d) to continue to operate as an exception to the generally applicable requirement set forth in Section 14-701(1)(c).

14

Commission's frontage designation did not affect the setback requirements for the Property. Objectors may be correct, but the issue is irrelevant. Because Section 14-701(1)(d) is dispositive, a primary frontage designation was not necessary to resolve the question of what front yard setback is required for the Property.

The Zoning Board did not err in holding that because the Property is zoned CMX-2, it does not need to have a front yard setback along either Bethlehem Pike or Summit Street under Section 14-701(1)(d) of the Zoning Code. The Zoning Board's conclusion that the front yard setback requirements apply only to the Property's primary frontage, as designated by the Planning Commission, lacks support in the language of the Zoning Code. However, it is irrelevant to the outcome of this appeal.

## Conclusion

The Property fronts two streets and lies entirely in the CMX-2 District. The Zoning Code is clear that "a lot fronting on more than one street" is subject to "[t]he front yard requirements of the zoning district" in which the lot is located. ZONING CODE, §14-701(1)(d); R.R. 300a. We reject Objectors' argument that Section 14-701(1)(c) has any application to the Property. Section 14-701(1)(c) of the Zoning Code is a general provision that ensures that buildings between the block's corners line up in a tidy line. Section 14-701(1)(c) applies generally and conflicts with Section 14-701(1)(d), which is a provision particular to a corner lot. Because the conflict in these provisions is irreconcilable, the special provision prevails, 1 Pa. C.S. §1933, and Section 14-701(1)(d) governs the Property's front yard setback.

For all these reasons, we hold that the Zoning Board did not err in upholding the issuance of the zoning permit and denying Objectors' appeal. Therefore, we reverse the trial court's September 13, 2022, order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Dumas did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Chestnut Hill
Community Association, Chestnut
Hill Baptist Church, James Bruno,
Maureen Pie-Bruno, Eileen Sisle,
Kenneth Schotsch, and Devon
Cargerry

v.                          :    No. 1034 C.D. 2022

City of Philadelphia Zoning Board
of Adjustment and 10 Bethlehem Pike
Property Owner, LLC

Appeal of: 10 Bethlehem Pike
Property Owner, LLC

# **O R D E R**

AND NOW, this 4th day of June, 2024, the order of the Court of Common Pleas of Philadelphia County, dated September 13, 2022, in the above-captioned matter, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita