# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny Tower Associates, LLC, : 
                   Appellant : 
                   : 
          v. : No. 2085 C.D. 2015
                   : Argued: December 12, 2016
City of Scranton Zoning Hearing : 
Board : 

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                  **FILED: January 10, 2017**

Allegheny Tower Associates, LLC (Applicant) asks whether the Court of Common Pleas of Lackawanna County (trial court) erred in affirming a decision of the City of Scranton Zoning Hearing Board (ZHB), which, based on a split decision, technically denied Applicant's request for a special exception to construct a monopole (commercial communications) tower. Applicant asserts the ZHB erred in denying its special exception request where it presented sufficient evidence to show its entitlement to special exception approval under the City of Scranton Zoning Ordinance (zoning ordinance). Upon review, we reverse.

## I. Background

In May 2015, Applicant filed an application with the ZHB seeking a special exception to construct a monopole communications tower at 2630 Winfield Avenue in Scranton (property). The property is located in a Light Industrial District (I-L).

The ZHB held a hearing on the application. Attorney Timothy Siegfried appeared with his client, Joseph Fitzsimmons of Allegheny Tower Associates, Inc., on Applicant's behalf. Fitzsimmons proposed to construct a 140-foot high monopole communications tower on the property, which would replace an existing 120-foot high guyed tower. Fitzsimmons testified: the property is mostly surrounded by commercial or industrial uses; the proposed use would comply with the zoning ordinance's setback provisions; Applicant would provide proper screening; and, the proposed use would not disturb the neighborhood. Further, the proposed tower would not be lighted, and it would comply with all Federal Communications Commission regulations.

James Walsh testified in opposition to Applicant's proposed communications tower. He explained the existing guyed tower is no more than two feet in diameter, and the new tower would be approximately eight feet in diameter. Daryl Palmer also testified in opposition to Applicant's proposed tower, stating it would be unsightly to residential neighbors (in a near-by zone) and dangerous if it fell on an adjoining gas station.

At the conclusion of the hearing, the four-member ZHB reached a split decision, resulting in a deemed denial of Applicant's special exception application.[1]

_____

[1] See, e.g., Giant Food Stores, Inc. v. Zoning Hearing Bd. of Whitehall Twp., 501 A.2d 353 (Pa. Cmwlth. 1985).

2

The ZHB subsequently issued a written decision in which it explained that under Section 306(B) of the zoning ordinance, a commercial communications tower is permitted by special exception in an I-L zoning district. Further, Section 119(C) of the zoning ordinance states that the ZHB shall approve any proposed special exception if it finds adequate evidence exists that the proposed use will satisfy: (1) all standards listed in Section 118(C)(4) of the zoning ordinance; (2) the specific standards for the proposed use in Sections 402 and 403 of the zoning ordinance; and, (3) all other applicable zoning ordinance requirements.

The ZHB explained that Section 118(C)(4) addresses issues relating to traffic, safety, storm water management and impact on the neighborhood. In particular, Section 118(C)(4)(e) states the proposed use "will not significantly negatively affect the desirable character of an existing residential neighborhood." Id.[2]

---

[2] In addition, Section 402(13) of the zoning ordinance states:

> 13. <u>Communications Antennae, Commercial.</u>
>
> a. Any such antenna that is attached to an existing business building or a nonresidential buildings [sic] of more than 5 stories shall not be regulated by this Section, and instead is permitted by right without additional regulations under this Ordinance. *See* requirements of the City Building Code.
>
> b. A freestanding antenna shall be setback a minimum distance equal to half its height from all lot lines and existing street right-of-way lines.
>
> c. The base of a freestanding antennae shall be surrounded by a secure fence with a minimum height of 8 feet.
>
> d. Any freestanding antennae higher than 50 feet that is within 100 feet of a public street or dwelling shall be buffered along that street

**(Footnote continued on next page…)**

3

Ultimately, by a two-to-two vote, the ZHB technically denied Applicant's special exception application because the proposed tower did not meet the standard set forth in Section 118(C)(4)(e) of the zoning ordinance, that the proposed use will not significantly negatively affect the desirable character of an existing residential neighborhood. Applicant appealed to the trial court.

Without taking additional evidence, the trial court issued an order affirming the ZHB. Applicant appealed to this Court, and the trial court directed it to file a concise statement of the errors complained of on appeal, which it did.

In a subsequently filed opinion pursuant to Pa. R.A.P. 1925(a), the trial court concluded the ZHB's determination that Applicant did not prove its proposed use would not significantly negatively affect the desirable character of an existing residential neighborhood was supported by substantial evidence. To that end, the ZHB credited the testimony of the objectors (Palmer and Walsh) that the proposed tower would have a substantial negative impact on the existing residential neighborhood over Fitzsimmons' contrary testimony.

The trial court also rejected Applicant's argument that the trial court erred in upholding the ZHB's decision based on Conclusion of Law No. 15, which states: "By a vote of 2-2, the [a]pplication for a [s]pecial [e]xception was denied finding the proposed tower would not meet the standards of [Section 118

_____
(continued…)

> or lot line (except at the driveway crossing) by evergreen screening
> or preserved woods meeting the requirements of Section 803.

4

(C)(4)(e)]." ZHB Op., 6/15/15, Concl. of Law No. 15. In response, the trial court explained the hearing transcript clearly showed the ZHB voted two-to-two. See ZHB Hr'g, 6/10/15, at 54-55. The trial court noted that a tie vote is deemed a denial under applicable law. The trial court further stated that, in its findings of fact and conclusions of law, the ZHB adequately detailed its reasons for denying the requested special exception. This matter is now before us for disposition.

## II. Discussion
### A. Contentions

On appeal,[3] Applicant begins by pointing out that a special exception applicant has the duty to present evidence and the burden of persuading the ZHB that its proposed use meets the ordinance's objective requirements. MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd., 102 A.3d 549 (Pa. Cmwlth. 2014), appeal denied, 113 A.3d 281 (Pa. 2015) (citing Morrell v. Zoning Hearing Bd. of Borough of Shrewsbury, 17 A.3d 972, 975 (Pa. Cmwlth. 2011); Greaton Props. v. Lower Merion Twp., 796 A.2d 1038, 1045-46 (Pa. Cmwlth. 2002)). Here, Applicant contends, it satisfied this burden by presenting evidence that its proposed tower would comply with all of the zoning ordinance's requirements. Once an applicant meets this burden, "a presumption arises that the use is consistent with the health, safety and general welfare of the community." Id. at 553. The burden then shifts to the objectors to present evidence and persuade the ZHB that the proposed use will have a generally detrimental effect. Id.

---

[3] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

Here, Applicant maintains, the objectors did not satisfy their burden of showing the proposed tower would be detrimental to public health, safety and welfare. Applicant argues that, in attempting to satisfy this burden, the objectors produced no sufficient, credible evidence; instead, they relied solely on speculation and unfounded personal opinions. Because Applicant proved its proposed tower would comply with all zoning ordinance requirements, and the objectors did not show the tower would have a detrimental effect, Applicant asserts, the ZHB should have approved the special exception application.

Applicant argues the ZHB's findings and conclusions state, without explanation, that the proposed tower would not meet the standards of Section 118(C)(4)(e) of the zoning ordinance, which requires that a proposed use "not significantly negatively affect the desirable character of an existing residential neighborhood." Applicant contends the ZHB's findings and conclusions offer no explanation or analysis as to *how* the ZHB reached this conclusion. Further, according to Applicant, there is nothing in the transcript to support any such determination.

Applicant asserts that, pursuant to Section 306(B) of the zoning ordinance, a commercial communications tower, like the proposed tower, is permitted by special exception in the I-L zoning district. Section 119(C) of the zoning ordinance states that the ZHB shall approve any proposed special exception if it finds adequate evidence that the proposed use will meet: (1) all standards listed in 118(C)(4) of the zoning ordinance; (2) specific standards for the proposed use listed in Sections 402 and 403 of the zoning ordinance; and, (3) all other applicable

zoning ordinance requirements. Applicant notes Section 118(C)(4) of the zoning ordinance discusses additional criteria that must be met prior to approval of special exception requests. Applicant then details the record evidence that it contends shows its proposed tower satisfies all of these criteria.

Applicant also maintains the record lacks substantial evidence that its proposed tower would substantially affect the health, safety and welfare of the community. Applicant argues that at the ZHB hearing, after Applicant presented evidence to establish the proposed tower met the zoning ordinance's objective requirements, two objectors (Walsh and Palmer) testified and expressed their concerns about the proposed tower. Reproduced Record (R.R.) at 215a-226a.

Notwithstanding the testimony of these objectors, Applicant contends, the law is clear that objectors to a special exception application cannot meet their burden by merely speculating as to possible harm, but instead must show a "high degree of probability that the proposed use will substantially affect the health, safety and welfare of the community." MarkWest, 102 A.3d at 570 (citation omitted). "More specifically, objectors' evidence must show a high probability that the use will generate adverse impacts not normally generated by this type of use …." Id. (citation omitted). Here, Applicant argues, the objectors did not meet this burden.

The ZHB[4] responds that the only issue to be decided by it, as the trier of fact, was whether or not the proposed communications tower would

_____

[4] Only the ZHB filed a brief in opposition to Applicant's appeal to this Court.

7

"significantly negatively affect the desirable character of the existing residential neighborhood," under 118(C)(4)(e) of the zoning ordinance.

The ZHB notes it heard testimony from Applicant, who stated no negative affect on the neighborhood would occur, and from two neighbors, Walsh and Palmer, who testified the proposed tower would negatively affect the neighborhood. Walsh testified he owns a car lot adjacent to the proposed tower. He stated the existing tower is a guyed tower like an old ham radio tower. The new tower would be four to five times wider and 140 feet in height. He explained that comparing the old tower to the proposed tower is like comparing a toothpick to a telephone pole. For his part, Palmer explained he lives across the street from the proposed tower. Like Walsh, Palmer worried that if the tower fell, it could fall on the adjacent gas station. Palmer also stated the proposed tower would detract from the neighborhood because he would be able to see it from his front lawn.

The ZHB maintains that, as trier of fact, it heard this testimony, and it was certainly within its purview to make the decision it did, *i.e.*, that the new communications tower *would* negatively affect the residents in the neighborhood. The ZHB argues it did not abuse its discretion in arriving at that conclusion, and it applied the correct law (Section118(C)(4)(e) of the zoning ordinance). Thus, it did not commit an error at law.

In sum, the ZHB contends, based on the testimony presented, the trial court did not err in finding the ZHB did not abuse its discretion or commit an error of law in denying the special exception request. A reasonable person could conclude the testimony of Walsh and Palmer was credible and the proposed tower

8

would significantly negatively affect the desirable character of existing residential neighbors. Thus, the ZHB asserts, this Court should dismiss Applicant's appeal.

## 2. Analysis

A special exception is neither special nor an exception, but a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the health, safety and welfare of the community. Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of L. Heidelberg Twp., 918 A.2d 181 (Pa. Cmwlth. 2007). Further, as Robert S. Ryan explains:

> Zoning boards often hear protestants argue that an applicant for a special exception should be required to observe the law as set forth in the zoning ordinance. That argument is appropriate in an application for a variance, but not in a case involving a special exception. The applicant for an exception *is* following the zoning ordinance. His application is one envisioned by the ordinance and, if the standards established by the ordinance are met, his use is one permitted by its express terms.

Robert S. Ryan, PENNSYLVANIA ZONING LAW AND PRACTICE, §5.1.1 (2001) (emphasis in original).

An applicant for a special exception has both the duty of presenting evidence and the burden of persuading the ZHB that its proposed use satisfies the zoning ordinance's objective requirements for the grant of a special exception. Greaton Props., Inc. v. L. Merion Twp., 796 A.2d 1038 (Pa. Cmwlth. 2002). Once the applicant meets its burden of proof and persuasion, a presumption arises that it

9

is consistent with the health, safety and general welfare of the community. Id. The burden then normally shifts to the objectors to present evidence and persuade the ZHB that the proposed use will have a generally detrimental effect on health, safety and welfare. Id. The evidence presented by the objectors must show a high probability that the use will generate adverse impacts not normally generated by this type of use, and that these impacts will pose a substantial threat to the health and safety of the community. Id.

In Bray v. Zoning Board of Adjustment, 410 A.2d 909 (Pa. Cmwlth. 1980), this Court outlined the rules concerning "initial evidence presentation duty (duty) and persuasion burden (burden) in special exception cases" as follows:

> *Specific requirements*, e. g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally:
>
> The applicant has both the duty and the burden.
>
> *General detrimental effect*, e. g., to the health, safety and welfare of the neighborhood:
>
> Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.
>
> *General policy concern*, e. g., as to harmony with the spirit, intent or purpose of the ordinance:
>
> Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant.

Id. at 912-13 (underlined emphasis added).

Here, the ZHB denied Applicant's special exception application based *solely* on Section 118(C)(4)(e), which states:

> The [ZHB] shall approve any proposed [special exception] if [it] find[s] adequate evidence that the proposed use will ….
>
>         \* \* \* \*
>
> 4. Comply with all of the following standards:
>
>         \* \* \* \*
>
>    e. Neighborhood. Will not significantly negatively affect the desirable character of an existing residential neighborhood.

Id. Although not entirely clear from the ZHB's decision in support of a deemed denial, it appears the ZHB based its determination on the following two factual findings:

> 6. James Walsh spoke against the tower. He stated the present [guyed] tower is no more than 2 feet in diameter and the new tower would be about 8 feet in diameter.
>
> 7. Daryl Palmer also spoke against the tower stating it would be unsightly to the residential neighbors and dangerous if it fell on the adjoining gas station.

ZHB Op., Findings of Fact Nos. 6, 7. Although the testimony of Walsh and Palmer supports the ZHB's findings, these findings are insufficient to justify the ZHB's denial of Applicant's special exception application.

To that end, where, as here, the terms of an ordinance have not expressly placed the burden of persuasion regarding general detrimental effects to

11

the health, safety and welfare on an applicant, the applicant has the burden of persuasion only as to specific requirements, while objectors have the burden as to all general detrimental effects. See Marquise Investment, Inc. v. City of Pittsburgh, 11 A.3d 607 (Pa. Cmwlth. 2010). Thus, an applicant for a special exception need only prove compliance with the specific, objective special exception criteria set forth in the zoning ordinance. Id.

Here, the ZHB did not determine that Applicant failed to satisfy any of the specific, objective special exception criteria in the zoning ordinance. Indeed, in its brief to this Court, the ZHB explains, "the only issue to be decided by the trier of fact in this [a]pplication, which is the [ZHB], is whether or not the proposed antenna will or will not 'significantly negatively affect the desirable character of the existing residential neighborhood,' under 118.C.4.e [of the zoning ordinance]." Br. of Appellee, City of Scranton Zoning Hearing Board, at 10.

Further, because Section 118(C)(4)(e) relates to general detrimental effects to the health, safety and welfare of the neighborhood and because the zoning ordinance does not clearly place the burden regarding this criterion on a special exception applicant, the objectors bore both the initial evidence presentation duty and the persuasion burden. Bray. Additionally, the law is clear that the objectors cannot meet their burden by merely speculating as to possible harm. Marquise Investment.

To satisfy their burden, the objectors had to show, to a high probability, that the proposed use would generate adverse impacts not normally

generated by this type of use, and that those impacts would pose a substantial threat to the health and safety of the community. Oasis v. Zoning Hearing Bd. of S. Annville Twp., 94 A.3d 457 (Pa. Cmwlth. 2014). This is particularly true here given that Section 118(C)(4)(e) of the zoning ordinance requires the ZHB to consider whether the proposed use will *significantly* negatively affect the desirable character of an existing residential neighborhood. Testimony based on specific past experiences can satisfy this burden, but bald assertions, personal opinions and speculation will not. Oasis.

As Robert S. Ryan illustrates, "[p]roof that goes no further than to establish (for example) that there are residences close to a proposed gasoline station is insufficient, for to permit a denial on that basis would be to overrule the legislative judgment reflected in zoning." Robert S. Ryan, Pennsylvania Zoning Law & Practice, §5.3.4 (rev. 2003).

Here, before the ZHB, the objectors (Palmer and Walsh) testified to the following concerns: (1) existing problems with flooding in the area of the proposed tower; (2) that there was a possibility the proposed tower could fall onto an adjacent gas station; (3) that the proposed tower would cause a potential decrease in property values; and, (4) that the proposed tower created aesthetic concerns. Our review of the ZHB's hearing transcript reveals the objectors' concerns were based on bald assertions, personal opinions and speculation. See R.R. at 215a-226a. Thus, the objectors' testimony did not show a high probability that the proposed tower would generate adverse impacts not normally generated by a commercial communications tower.

13

More specifically, although the objectors expressed general concerns over flooding in the area, these concerns related to *pre-existing* flooding issues. Indeed, the objectors offered no clear explanation as to how the proposed tower would exacerbate those issues. This is not surprising in light of the fact that Applicant's proposal does *not* entail an increase in the existing impervious surface at the property. R.R. at 209a-210a. Further, in response to the objectors' testimony on this point, Applicant's representative testified that construction of the tower would not increase any existing flooding issues in the area. R.R. at 227a, 231a-32a. And, most importantly, the ZHB made no finding that the proposed tower would create or intensify any flooding issues.

Further, the objectors' testimony regarding the chance the proposed tower could fall was based purely on speculation, which the objectors did not even attempt to substantiate. See R.R. at 218a, 224a. Contrary to the objectors' speculative testimony, Applicant's representative testified that in more than 30 years he built over 200 cellular communications towers, none of which ever fell. 228a-29a. He further testified that the towers are designed based on area wind speeds, and they are built not only to withstand those wind speeds but to withstand even "more robust" wind speeds. R.R. at 229a.

Finally, the objectors' general testimony regarding a potential decline in property values and general aesthetic concerns is also insufficient to meet their burden. In Coble Construction Co. v. Zoning Hearing Board of Borough of East Stroudsburg, 329 A.2d 912 (Pa. Cmwlth. 1974), this Court explained:

> Neither aesthetic reasons nor the conservation of property values nor the stabilization of economic values in a

township are, singly, or combined, sufficient to promote the health or the morals or the safety or the general welfare of the township or its inhabitants or property owners, within the meaning of the enabling act or under the Constitution of Pennsylvania. <u>The Legislature in providing for special exceptions in zoning ordinances has determined that the impact of such a use of property does not, of itself, adversely affect the public interest to any material extent in normal circumstances, so that a special exception should not be denied unless it is proved that the impact upon the public interest is greater than that which might be expected in normal circumstances</u>. … The burden is on the township and the protesting neighbors, if there are any, to [p]rove by evidence that the impact of the requested use in its normal operation would be injurious to the public health, safety and welfare. <u>The protestants cannot sustain that burden by merely introducing evidence to the effect that property values in the neighborhood may decrease</u>.

<u>Id.</u> at 917 (citations and quotations omitted) (emphasis added); <u>see also</u> <u>Lombardozzi v. Millcreek Twp. Zoning Hearing Bd.</u>, 829 A.2d 779 (Pa. Cmwlth. 2003) (aesthetic factors alone cannot justify a municipality's zoning decision); <u>Shamah v. Hellam Twp. Zoning Hearing Bd.</u>, 648 A.2d 1299, 1304 (Pa. Cmwlth. 1994) (adverse effect on public welfare cannot be established "by merely introducing evidence to the effect that property values in the neighborhood may decrease"). In light of the fact that the objectors' other reasons for opposing Applicant's special exception application are unsustainable, the protection of aesthetics and property values cannot serve as sufficient bases for the ZHB's denial of Applicant's special exception application. <u>Wyomissing Area Sch. Dist. v. Zoning Hearing Bd. of Wyomissing Borough</u>, 128 A.3d 851 (Pa. Cmwlth. 2015), <u>appeal</u> <u>denied</u>, 141 A.3d 484 (Pa. 2016). Moreover, as with their other concerns, the objectors' lay testimony on this point was based solely on their personal

opinions, bald assertions and speculation, which is insufficient to meet their burden. <u>Oasis</u>.

In sum, the objectors offered speculative testimony regarding the alleged adverse effects of Applicant's proposed communications tower. The objectors did not present evidence that the proposed tower would generate adverse effects greater than that normally expected from this type of use. Further, while the objectors offered some testimony that Applicant's proposed use was inconsistent with the character of the neighborhood, the fact remains that the property lies in a Light Industrial District, and communications towers (as well as a wide array of other commercial and industrial uses) are permitted by special exception in that district. Additionally, while there are some residences near the property, the property is largely surrounded by commercial and industrial uses. R.R. at 198a, 227a. Also, a 120-foot high guyed tower currently exists on the property. The objectors' general concerns were directed more at the language of the zoning ordinance, which permits a communications tower by special exception in the I-L District, rather than Applicant's specific proposed use. Thus, the testimony offered by the objectors was not sufficient to defeat Applicant's special exception application. The ZHB erred in determining otherwise.

Accordingly, we reverse the deemed denial of Applicant's special exception application.

ROBERT SIMPSON, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny Tower Associates, LLC, : 
                      Appellant : 
                      : 
           v. :    No. 2085 C.D. 2015 
                      : 
City of Scranton Zoning Hearing : 
Board : 

## O R D E R

**AND NOW**, this 10th day of January, 2017, the order of the Court of Common Pleas of Lackawanna County is **REVERSED**.

 

_____
ROBERT SIMPSON, Judge