Polaris Renewal Services, Inc., :
                    Appellant :
                                    :
          v.                        : No. 950 C.D. 2017
                                    : ARGUED: February 5, 2018
Fayette County Zoning Hearing       :
Board and Fay-Penn Economic         :
Development Council                 :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED: March 13, 2018


Polaris Renewal Services, Inc. (Polaris) appeals from the June 28, 2017 Order of the Court of Common Pleas of Fayette County (Trial Court) affirming the decision of the Fayette County Zoning Hearing Board (Board) to deny Polaris's application for a use by special exception. We reverse.

## BACKGROUND

Polaris holds an option to lease the first floor of a building (the Property) located in North Union Township, Fayette County, Pennsylvania. The Property is located in an M-1 Light Industrial Zone District (M-1 District). Polaris seeks to operate a methadone clinic (Clinic) on the Property, which had previously been used as a medical clinic. Reproduced Record (R.R.) at 27a. Under Section 1000-203 of the Fayette County Zoning Ordinance (Ordinance), a methadone treatment facility

is permitted as a use by special exception in an M-1 District. Ordinance, § 1000-203; R.R. at 328a. Polaris filed with the Board an application for a use by special exception (Application) on August 22, 2016. The Board held public hearings on September 14, 2016 and September 28, 2016. Testimony was presented by Polaris, as well as Mr. Daniel Gearing, owner of DCG Enterprises, and Mr. Ronald Cole, owner of Fay-Penn Economic Development Council (Fay-Penn).[1] Both DCG Enterprises and Fay-Penn (together, Objectors) objected to the proposed Clinic that would be situated next to their business properties.

On November 10, 2016, the Board issued a decision[2] denying Polaris's Application, concluding that "[Polaris] has not met the burden of proof and the proposed [Clinic] on the subject property and [sic] will adversely affect the health, safety and welfare of the surrounding area, specifically due to traffic." R.R. at 6a. Polaris appealed to the Trial Court, which took no further evidence and affirmed the Board's decision. This appeal followed.[3]

## ISSUES

On appeal, Polaris argues that the Board incorrectly applied the burden of proof applicable to special exceptions. Polaris claims the Board erroneously denied its application on the grounds that Polaris had not met its burden of proof and the proposed Clinic would "adversely affect the health, safety and welfare of the

---

[1] Only Fay-Penn filed a Notice of Intervention with the Trial Court.

[2] The Board refers to its decision as "Resolution 16-41." R.R. at 6a.

[3] Where the Trial Court has taken no additional evidence, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Greaton Props. v. Lower Merion Twp.*, 796 A.2d 1038 (Pa. Cmwlth. 2002).

surrounding area, specifically due to traffic." R.R. at 6a. Polaris also asserts the record lacks substantial evidence to support the Board's finding that increased traffic would adversely affect the health, safety, and welfare of the surrounding area.

In its appeal brief, the Board recognizes it may have placed the burden of proof on the incorrect party, but asserts that such error was harmless because the Trial Court rectified that error in its decision. Both the Board and Fay-Penn argue that the Board's decision is supported by substantial evidence.

## DISCUSSION

### A. Burden of Proof

In its opinion and order entered June 28, 2017, the Trial Court summarily disposed of the "burden of proof" issue in a footnote, stating, "While this Court finds that the wording of any purported burden-shifting by the [] Board may have been improper, it is of no consequence since this Court is convinced that the [O]bjectors produced substantial evidence that the proposed use would have the aforementioned adverse impact." Trial Ct. Op., 6/28/17, at 6 n.3. Both the Board and the Trial Court confusingly conflate the issues of burden of proof, burden-shifting, and sufficiency of evidence in their arguments and analyses.

A special exception is not an exception to a zoning ordinance, but rather a use that is expressly permitted absent a showing of detrimental effect on the community. *Greaton Props.*, *v. Lower Merion Twp.*, 796 A.2d 1038, 1045 (Pa. Cmwlth. 2002). An applicant for a special exception has the burden of proving that the proposed use satisfies the objective requirements of the ordinance for the grant of a special

3

exception.[4] *Id.* Once the applicant satisfies this burden, a presumption arises that the use is consistent with the health, safety, and general welfare of the community. *Id.* at 1045-1046. The burden then shifts to the objectors to establish the proposed use will have a detrimental effect on the community. *Id.* at 1046.

In denying Polaris's Application, the Board determined Polaris had not met its burden of proof. In support of this determination, the Board simply asserted that "[Polaris] has not met the burden of proof and the proposed [Clinic] on the subject property and [sic] will adversely affect the health, safety and welfare of the surrounding area, specifically due to traffic." R.R. at 6a. This sentence constitutes the entire sum and substance of the Board's Findings of Facts and Conclusions of Law on this issue.[5] Neither the Board nor Fay-Penn, cites a single part of the record to support this bald conclusion.

In their appellate briefs, the Board and Fay-Penn raise the issue of inadequate parking to justify the Board's determination that Polaris failed to meet its burden of proving the proposed Clinic met the requirements of the pertinent Ordinance. This

---

[4] For example, in the instant matter, Polaris had to demonstrate compliance with the applicable express standards and criteria of Section 1000-800 of the Ordinance (relating to special exceptions), and the applicable minimum lot area, maximum lot coverage, maximum building height, setback requirements and buffer yard requirements of the M-1 District. Ordinance, § 1000-800(A); R.R. at 329a. Polaris had to further demonstrate compliance with the parking requirements of Section 1000-303 of the Ordinance. Ordinance, § 1000-303; R.R. at 331a-340a. The Ordinance has no specific requirements for a methadone clinic or medical office. Therefore, Polaris only had to show compliance with the requirements relating to parking, lot area, lot coverage, etc. of the M-1 District. Polaris presented evidence demonstrating the Property already complied with those requirements of the Ordinance. R.R. at 25a-62a, 280a-282a.

[5] The Board's decision is just over a single page.

4

alleged inadequacy of parking is a red herring. The Board never discussed lack of appropriate parking in its decision denying Polaris's Application and the Trial Court did not address the parking issue in its Opinion. As such, this issue is improperly raised by the Board on appeal and waived.

Even if the parking issue was properly before this Court, the record directly contradicts the Board's assertion. Under the Ordinance,[6] Polaris was required to create eighteen parking spaces for the Clinic. Polaris presented evidence that the Clinic would use 3,600 square feet of space and create thirty-eight parking spaces, twenty more than the Ordinance requires. While Fay-Penn presented evidence disputing the available parking, the Board never challenged Polaris's evidence that Polaris would provide 38 parking spots which was twenty spots in excess of what the Ordinance required. Bd.'s Findings of Fact, Nos. 3-4; R.R. at 6a.

Here, the **uncontradicted** evidence established that the proposed Clinic met the objective requirements of the Ordinance, thereby creating a presumption that the proposed use was consistent with the health, safety, and general welfare of the community.

As such, the Board and the Trial Court erred in its determination that Polaris did not meet its initial burden of proof to obtain the special exception.

---

[6] Under Section 1000-303(A)(1)(a) of the Ordinance, a standard off-street parking space shall be a minimum of nine feet wide and nineteen feet long. Ordinance, § 1000-303(A)(1)(a); R.R. at 331a. Table 6 of the Ordinance sets forth additional parking and loading requirements. Ordinance, § 1000-303, Table 6; R.R. at 333a-340a. All parties agree that a medical office, such as the one proposed for the Property, requires one parking space for every 200 square feet of gross floor area. Ordinance, § 1000-303, Table 6(B)(65); R.R. at 337a. Mr. Louis Waller, a co-owner of the proposed Clinic, testified that the parking spaces designated on the site plan are nine feet wide and nineteen feet long. R.R. at 207a. Based on the Board's findings, Polaris has exceeded the parking space requirement by twenty spaces.

## B. Adverse Traffic Conditions

Polaris next argues that Objectors' evidence related to adverse traffic conditions was insufficient to defeat its request for a special exception.

If the Board's findings of fact are not supported by substantial competent evidence of record, it has committed an abuse of discretion. *Lake Adventure, Inc. v. Zoning Hearing Bd. of Dingman Twp.*, 440 A.2d 1284, 1287 (Pa. Cmwlth. 1982). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

Here, the record shows Polaris established the proposed Clinic met the requirements of the Ordinance, thereby creating a presumption that the proposed use was consistent with the health, safety, and general welfare of the community. The burden then shifted to Objectors to rebut this presumption by presenting evidence that the operation of the Clinic would have a detrimental effect on the public health, safety, and welfare of the community.

The Board made a specific finding that operation of the Clinic would "adversely affect the health, safety and welfare of the surrounding area, *specifically due to traffic*." R.R. at 6a, emphasis added. However, an increase in traffic alone is insufficient to justify the refusal of an otherwise valid land use. *Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd.*, 590 A.2d 65, 71 (Pa. Cmwlth. 1991). *Id.* The fact that a proposed use would contribute to projected traffic congestion primarily generated by other sources is not a sufficient basis for denying a special exception. *Id.* To warrant a denial, there must be "not only a likelihood but a **high degree of probability**" that the traffic increase will pose a substantial

6

threat to the health and safety of the community. *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 914 (Pa. Cmwlth. 1980) (emphasis added) (quoting *Appeal of O'Hara*, 131 A.2d 587, 596 (Pa. 1956)). Until such a strong degree of probability is evidenced by legally sufficient testimony, no court should act to deprive a landowner of the otherwise legitimate use of his land. *Appeal of O'Hara¸* 131 A.2d at 596.

Objectors to an application for a use by special exception cannot meet their burden by merely speculating as to possible harm. Allegheny *Tower Assocs., LLC v. City of Scranton Zoning Hearing Bd.*, 152 A.3d 1118, 1122 (Pa. Cmwlth. 2017). Lay testimony based on personal opinions, bald assertions, and speculation is insufficient to meet the burden of showing a proposed use will create adverse impacts not normally generated by that type of use, and those impacts pose a substantial threat to the health and safety of the community. *Id.* at 1126.

At the September 28, 2016 hearing, Mr. Gearing (neighboring business owner/objector) testified about traffic conditions near the Property. According to Mr. Gearing, a traffic light is located on State Route 119 (Rte. 119) at the closest intersection to the Property. R.R. at 178a. The speed limit on Rte. 119 drops from fifty-five miles per hour to forty-five miles per hour within one-quarter mile of the intersection. *Id.* at 179a. To access the Property, one would turn off Rte. 119, drive approximately one car length, and make a left turn. *Id.* at 180a. Although southbound traffic on Rte. 119 has a turning lane at the intersection, the northbound lanes do not. *Id.* at 179a. Mr. Gearing was aware of three accidents at that location from January 1, 2016 through the date of the hearing in September 2016. *Id.* at 182a. He testified that "a lot of people run the lights . . . . [E]ither people are not paying

7

attention or the way the sun is people run these intersections all the time." *Id.* Mr. Gearing admitted he was not a traffic engineer and he was not familiar with road design. *Id.* at 192a. He had never conducted a traffic study or commissioned a traffic study for the intersection on Rte. 119. *Id.* Finally, Mr. Gearing never objected to the construction of the Speedway gas station located at that same intersection. *Id.*[7]

Polaris presented the testimony of Mr. Stephen Shaner, a co-owner of the proposed Clinic. Mr. Shaner testified about his sixteen years of experience operating similar clinics in the Commonwealth. R.R. at 71a. The proposed Clinic would treat 250 to 300 patients, with approximately forty to sixty percent of the patients visiting the clinic daily. *Id.* at 84a-85a. Based on his prior experience, Mr. Shaner expected the daily number of patients to split evenly between two "rush hours," which would occur from 5:30-7:00 a.m. and 10:30-11:30 a.m. *Id.* at 93a.

In affirming the Board's conclusion on the adverse impact issue, the Trial Court extrapolated from the record,[8] relying primarily on Objectors' Exhibit 6, which is an aerial photograph of the intersection. *See* Notes of Testimony, 9/28/16,

---

[7] Mr. Gearing also testified about traffic conditions at a separate methadone clinic owned by Polaris and located in Perryopolis in Fayette County. R.R. at 190a-192a. However, as this is a completely different clinic at a completely different location, any evidence regarding traffic conditions at the Perryopolis site is irrelevant to traffic conditions at the proposed Clinic at the Property in question.

Even so, the proposed Clinic would have eased any traffic issues at the Perryopolis clinic. Following the closure of another methadone provider in Fayette County, the Perryopolis clinic absorbed approximately 400 new patients. R.R. at 72a. Polaris's proposed construction of the Clinic at issue here was a response to the need for a second methadone provider in Fayette County. *Id.*

[8] Neither the Trial Court, nor the Zoning Board, provided a single citation to the record to support its findings. That responsibility was left to this Court.

Ex. 6. Based on this photo, the Trial Court made the following findings: The entrance driveway to the Property is a "traffic bottleneck that has a high probability of creating severe congestion." Trial Ct. Op., 6/28/17, at 6. While traffic from other sources causes an already dangerous traffic condition, "other sources will not be the primary source of the dangerous intersection." *Id.* at 6-7. The high volume of patients during the proposed rush hours will, at times, be required to stop in the right land traveling northbound while vehicles are blocking the fifty-foot right-of-way used to access the Property. *Id*. at 7. The Trial Court concluded this would happen even when the light at the intersection is green. *Id.*

Additionally, the Trial Court noted between fifty and ninety vehicles would enter the intersection during each rush hour and Rte. 119 lacks a turning lane, which would afford a safe place for vehicles to wait while congestion builds up.[9] R.R. at 84a-85a, 179a. Finally, the Trial Court cited the short distance, one car length, a driver would travel after turning off Rte. 119 before making an immediate left to access the Property. *Id.* at 180a. The Trial Court concluded this evidence showed no "mere increase in traffic; rather, it would create a situation that is detrimental to the health, safety, and welfare of the individuals who travel along these roadways." Trial Ct. Op. at 7.

Section 1005-A of the Pennsylvania Municipalities Planning Code provides that, where the decision being appealed does not include findings of fact, the

---

[9] In determining the number of cars that could be entering and exiting the facility, the Trial Court presumably did its own math calculations based on Mr. Shaner's testimony.

appellate court may make its own findings based on the record below.[10] While the Board's sparse "Resolution" did contain limited findings of fact, not one of them supported the Board's conclusion that the Clinic would adversely affect the health, safety, and welfare of the community in regards to traffic. Any findings of fact relating to traffic found their genesis in the Trial Court's opinion. Where the Trial Court makes its own findings of fact based on the record before the Board, we must examine the Trial Court's decision for evidentiary support. *Eastern Consol. and Distrib. Servs., Inc. v. Bd. of Comm'rs*, 701 A.2d 621, 623 (Pa. Cmwlth. 1997).

The record contains evidence that indicates the Clinic will affect traffic conditions during certain time periods each day. The evidence is insufficient, however, to support the Trial Court's conclusion that a high degree of probability exists that the traffic increase will pose a substantial threat to the health and safety of the community.

The Trial Court's reliance on Exhibit 6 is particularly problematic given the questionable relevance and reliability of the photograph. The date and time when the photo was taken is not clear as the Speedway gas station at the intersection had not yet been constructed. Additionally, the photograph is neither an accurate depiction nor a good predictor of traffic as it would appear if the Clinic were located on the Property. For example, what the Trial Court characterizes as a "bottleneck" does not appear in Exhibit 6. In that photo, the right-hand northbound lane is not backed up with cars. To the contrary, the photo shows four cars driving northbound while separated by several car lengths. Additionally, the Trial Court's conclusion

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 11005-A, *added by* Act of December 21, 1988, P.L. 1329.

10

that "other sources will not be the primary source of the dangerous intersection" is speculative at best.

The record contains no traffic study for the intersection near the Property and no evidence regarding traffic conditions on Rte. 119 during those hours when the Clinic will have increased traffic. Additionally, there was no evidence establishing a baseline for the traffic already existing at those times, which would have indicated the increased traffic would "create a situation that is detrimental to the health, safety, and welfare of the individuals who travel along those roadways." Trial Ct. Op. at 7. It appears the Trial Court improperly assumed the role of traffic engineer/expert and made findings of fact that are unsupported by the record.

## CONCLUSION

We conclude the Trial Court's finding that the Clinic would adversely affect the health, safety, and welfare of the community because of increased traffic, is unsupported by substantial evidence. Accordingly, we reverse the Order of the Trial Court.

_____
ELLEN CEISLER, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Polaris Renewal Services, Inc., :
              Appellant :
               :
          v. : No. 950 C.D. 2017
               :
Fayette County Zoning Hearing :
Board and Fay-Penn Economic :
Development Council :

## O R D E R

AND NOW, this 13th day of March, 2018, the order of the Fayette County Court of Common Pleas, dated June 28, 2017, is hereby reversed.

                                        _____

                                        ELLEN CEISLER, Judge