# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Republic First Bank d/b/a       :
Republic Bank,                  :
              Appellant       :
                              :
             v.            :   No. 205 C.D. 2020
                              :   Argued: November 9, 2020
Marple Township Zoning Hearing  :
Board and Marple Township       :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER             FILED: December 14, 2020

Republic First Bank d/b/a Republic Bank (Republic) appeals from an Order of the Court of Common Pleas of Delaware County (common pleas) that affirmed in part and reversed in part a decision by the Marple Township Zoning Hearing Board (Board) to deny Republic a special exception to construct a bank in the Township.[1] Common pleas reversed the Board's determination that the proposed project did not meet most of the requirements for a special exception but affirmed the Board's determination that the proposed bank would not be "less objectionable

---

[1] Republic also sought use and dimensional variances, which the Board denied. Common pleas affirmed the Board's denial of the use variance and reversed the Board's Decision as to the dimensional variances. Neither party challenges that determination. We will, therefore, limit our discussion to the special exception request.

in external effects than the existing nonconforming use with respect to . . . [a]ppearance." (Marple Township Zoning Code § 300-124.C(4).) Marple Township (Township) has not cross-appealed from common pleas' Order. On appeal, Republic claims it was an error of law or an abuse of discretion to conclude the proposed bank, which would be a steel and glass structure, is "less objectionable in external effects than the existing nonconforming use," a two-story funeral home, "with respect to . . . [a]ppearance." (Marple Township Zoning Code § 300-124.C(4).) Because the sole remaining basis for denying the special exception is aesthetics, which precedent establishes cannot alone be the basis for denying zoning relief, we are constrained to reverse.

## I. BACKGROUND

The facts are not in dispute. Republic is the equitable owner of property located at 1998 Sproul Road, Broomall, Marple Township, Delaware County, Pennsylvania, which is zoned R-C Residential. Republic plans to demolish a vacant, 2-story funeral home and construct a 1-story, 2,971-square-foot bank. Also proposed is a drive-through lane, 24 parking spaces, fencing, landscaping, signage, and various other site improvements. The property is surrounded by a professional office building to the north, a dental office to the south, a shopping center to the east, and residential properties to the west.

Because Republic proposes to replace the funeral home, which is a preexisting nonconforming use, with another nonconforming use, on February 26, 2018, Republic filed an application seeking a special exception pursuant to Section 300-124 of the Marple Township Zoning Code, which provides as follows:

> Once changed to a conforming use, no building, structure or land shall be permitted to revert to a nonconforming use. A nonconforming use

2

may be changed to another nonconforming use only if all of the following conditions are met:

A.   Such change shall be permitted only as a special exception.

B.   The applicant shall show that the nonconforming use cannot reasonably be changed to a permitted use.

C.   The applicant shall show that the proposed change will be less objectionable in external effects than the existing nonconforming use, with respect to:

   (1)   Traffic generation and congestion, including truck, passenger car and pedestrian traffic;

   (2)   Noise, smoke, dust, fumes, vapors, gases, heat, glare or vibration;

   (3)   Storage, including storage of solid waste for disposal; and

   (4)   Appearance.

(Marple Township Zoning Code § 300-124.)

A hearing was held on April 3, 2018, at which Republic called various witnesses. Joseph S. Russella, an expert in site design and land development, testified, in relevant part, as follows:

[T]he existing facility was a home that was turned into a commercial use as a funeral home.

The bank is more attractive. It's a more modern look. It has a unique aesthetic character.

It does not have as high of a peak of a roof as the previous building did, but in general[,] it's just a more modern look to the property and more commercial, and it fits in with the commercial surrounding character[] along Sproul Road.

(Reproduced Record (R.R.) at 78a.)

3

When asked her opinion about the appearance of the bank, Lisa Thomas, an expert in land planning and landscape design, responded as follows:

The site will be cohesively designed with more cohesive aesthetics.

The plan is carefully thought out.

The architecture is carefully considered.

We are going from a two-and-a-half story building to a height of twenty-two feet which is significantly less than two-and-a-half stories.

(*Id.* at 92a.)[2]

Following the presentation of Republic's case and questions from the Board, the Board invited members of the public to speak on the proposal. The audience was advised that it could request party status, which would provide it with certain rights, or it would "merely mak[e] a comment[] in favor or against the project." (*Id.* at 155a.) Two residents voiced their opposition to the proposal.[3] The first expressed concern over traffic, lighting, and the number of banks already in the area. The resident also stated:

I ask that the Board take a look at the picture of the bank that is proposed . . . .

It is an extremely modern design.

I love modern. I love contemporary.

It is well-suited to Manhattan.

---

[2] In addition to Mr. Russella and Ms. Thomas, Republic also called Nicole R. Kline, an expert in traffic engineering, who testified about the impact on traffic; Robin Liggins, who testified about proposed signage; and Sharon Hammel, senior vice-president and chief retail officer of Republic, who testified about Republic's business plan and operations.

[3] One audience member, who serves on the Tree Commission, stated he was neutral on the project and asked questions about landscaping.

It might even be suited to Philadelphia.

It is not suited to this street and the community.

It does not look anything like the bank in Media[, where Republic operated another bank,] which actually kind of fits in.

(*Id.* at 161a.)

Another resident, whose property abuts the subject property, echoed her sentiments and added that the existing structure is "one of the nicest looking buildings" along Route 320, which would be torn down and replaced by "this glass structure, because it's all glass," and if Republic went out of business, it would be difficult to find a new occupant for such a building. (*Id.* at 167a.) The second resident continued:

We went to [its] Media site. It's pretty. It's an all-brick building with columns.

It looks like [another bank] that [Republic] just built near us a little further up.

[Republic] said no, [it is] not willing to put that there.

This building is basically plate glass. A glass tower. Stainless steel trim.

How does that resemble [another nearby building, which is] all brick with colonial windows[?]

(*Id.* at 168a.)

Following the residents' statements, the Board did not ask Republic whether it had any questions for the residents, nor did Republic seek to ask the residents any questions. Instead it adjourned for executive session. When it reconvened, the Board announced it would not be voting on Republic's application that evening.

5

The Board met again on April 18, 2018,[4] at which time it voted 4-0 to deny the application. Thereafter, the Board issued a written decision that contained 81 findings of fact and 37 conclusions of law. The Board summarized the testimony of Republic's witnesses and the comments of the residents before concluding Republic did "not satisf[y] all [the] objective requirements of the ordinance." (Board Decision, Conclusion of Law (COL) ¶ 6.) Addressing the special exception request, the Board concluded Republic failed to demonstrate that the property cannot reasonably be changed to a permitted use as required by Section 300-124.B. (*Id.* ¶¶ 7-8.) In addition, the Board concluded that Republic failed to show that the proposed bank would be less objectionable in terms of traffic generation and congestion, glare, or appearance than the current preexisting, nonconforming use as required by Section 300-124.C(1), (2), and (4), respectively. (*Id.* ¶¶ 9-15.) The Board determined the existing funeral home resembles a single-family dwelling, whereas the proposed bank "is an all[-]glass modern building, with a 'unique aesthetic character,' that is dramatically different in appearance than the existing nonconforming use." (*Id.* ¶¶ 16-17.) The Board further concluded the proposed bank would not be "consistent with the surrounding character of a neighborhood zoned R-C Residential in Marple Township." (*Id.* ¶ 18.) The Board expressly rejected the testimony of Mr. Russella and Ms. Thomas that the property would be less objectionable than the current use and that the "proposed bank's 'unique aesthetic character' and 'modern look' would be more attractive than the" existing funeral home. (*Id.* ¶¶ 19-20, 23.) The Board also concluded Republic did not satisfy the requirements for the requested variances.

---

[4] The Board had planned to meet in March but that meeting was canceled due to inclement weather.

Republic filed a timely appeal to common pleas, which took no additional evidence.[5] Based upon the parties' written submissions and its review of the record, common pleas issued its Order, dated January 21, 2020, affirming in part and reversing in part the Board's Decision. Pertinent for purposes of the present appeal, common pleas reversed the Board's determination that Republic did not show the property could reasonably be changed to a permitted use or that the proposed bank would be less objectionable in external effects than the existing nonconforming use, with respect to traffic, glare, or storage. Common pleas explained that the Board's findings with relation to these requirements were not supported by the record but were contradicted by the record. (Order at 3.) Common pleas further explained that the Board's finding "that the proposed bank use and building is not consistent with the surrounding character of the neighborhood zoned R-C [R]esidential in Marple Township [wa]s not supported by the record." (Order at 4.) According to common pleas, the evidence of future proposed commercial development was "probative" and was "enhanced by the other evidence of record detailing adjacent and surrounding commercial properties." (*Id.*) However, in relation to whether the proposed bank "would be less objectionable in external effects than the" funeral home, "with respect to . . . [a]ppearance," common pleas found the Board's findings were supported by the record, namely the testimony of the neighbors, and affirmed the Board's Decision on that basis. (Order at 3-4.)

---

[5] Because common pleas took no additional evidence, common pleas' review was, as is ours, limited to determining whether the Board erred as a matter of law or abused its discretion. *Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1211 n.8 (Pa. Cmwlth. 2014).

Thereafter, Republic timely appealed common pleas' Order to this Court. Township did not file a cross-appeal related to common pleas' reversal of the Board's Decision on the other bases.

## II. PARTIES' ARGUMENTS

On appeal to this Court, Republic argues that, because Section 300-124.C(4)'s requirement that the proposed nonconforming use be "less objectionable in external effects than the existing nonconforming use with respect [to] . . . appearance" is general and subjective, the initial burden was on any objectors, not Republic, to show the proposed use did not satisfy the requirement. Here, Republic argues, the only "objectors" were two residents who offered public comment that should not have been considered by the Board since the residents were not under oath or subject to cross-examination. Assuming that the residents' comments were admissible, Republic argues the statements were too generalized and, as a result, were insufficient for the residents to carry this burden. Moreover, Republic contends that the Board erred in denying the application based on the proposed bank's appearance. It asserts that aesthetics, as a matter of law, cannot be the sole basis for denying zoning relief.

Township responds as follows. Nonconforming uses are generally disfavored because they are inconsistent with a municipality's zoning ordinance. As a result, continuation of nonconforming uses should be strictly construed. Here, the proposed bank does not strictly comply with the Marple Township Zoning Code's requirements for a special exception. Contrary to Republic's assertions, Section 300-124 puts the burden on the applicant to show each criterion is satisfied, which Republic did not do. According to the Board, the only evidence of the appearance

of the existing structure was that the building was two stories; therefore, it was "impossible to determine whether the proposed structure was or was not less objectionable." (Township Brief (Br.) at 15.) It also argues that the testimony from Republic's expert that the building is "unique" and photographs depicting the glass building support its conclusion that the proposed bank would not be less objectionable than the funeral home in terms of appearance. To the extent Republic's witnesses testified that the height of the new structure was lower than the existing building, Township argues this is irrelevant to whether the proposed bank would be less objectionable with regard to appearance. In addition, it argues that the Board, as factfinder, was free to reject the testimony of Republic's witnesses and credit the residents who "testified with specificity" instead. (*Id.*) Furthermore, Township argues that Republic has waived its argument that the residents' testimony was incompetent because it neither objected at the Board hearing nor raised the issue before common pleas. Regardless, Township contends the testimony was admissible because Section 908(6) of the Pennsylvania Municipalities Planning Code (MPC)[6] provides the Rules of Evidence do not apply to zoning hearings.

Republic filed a reply brief, wherein it disputes Township's assertion that nonconforming uses are disfavored by law. Republic also points out that Township opted to allow the change from one nonconforming use to another. Republic also disputes Township's characterization of the residents' comments as testimony, asserting that the terms "testimony" and "witness" include a requirement of being under oath or affirmation, which the residents were not. Lastly, it asserts it did not waive its argument related to the residents' comments. Republic argues that residents are permitted to make public statements at the end of a hearing, but such

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(6).

comments cannot be treated as evidence. Because it did not know until the Board issued its Decision that the Board was going to rely on the residents' unsworn statements, it contends it had no reason to object.

## III.    DISCUSSION

As a preliminary matter, despite its name, a special exception is a misnomer. It is not an exception to a zoning ordinance but is a use that is expressly permitted by the ordinance unless the board determines, according to standards set forth in the applicable ordinance, that the proposed use would adversely affect the community. *E. Manchester Twp. Zoning Hearing Bd. v. Dallmeyer*, 609 A.2d 604, 610 (Pa. Cmwlth. 1992). Because the use is contemplated by the ordinance, there is a presumption that the governing body considered the effect of the use when enacting the ordinance and determined that the use is consistent with the health, safety, and welfare of the community so long as it meets the objective requirements of the ordinance. *Id.*

Here, the requirements for a special exception to change one nonconforming use to another are governed by Section 300-124 of the Marple Township Zoning Code, which provides:

A.    Such change shall be permitted only as a special exception.

B.    The applicant shall show that the nonconforming use cannot reasonably be changed to a permitted use.

C.    The applicant shall show that the proposed change will be **less objectionable in external effects** than the existing nonconforming use, with respect to:

(1)    Traffic generation and congestion, including truck, passenger car and pedestrian traffic;

10

> (2) Noise, smoke, dust, fumes, vapors, gases, heat, glare or vibration;
>
> (3) Storage, including storage of solid waste for disposal; and
>
> (4) **Appearance**.

(Marple Township Zoning Code § 300-124) (emphasis added).)

Republic argues that it was error to deny the special exception because the denial was based solely on aesthetics. While aesthetics is a valid consideration, it is well established that aesthetics alone cannot be the sole basis for denying zoning relief. *White Advert. Metro, Inc. v. Zoning Hearing Bd. of Susquehanna Twp.*, 453 A.2d 29, 35 (Pa. Cmwlth. 1982); *Heck v. Zoning Hearing Bd. for Harvey's Lake Borough*, 397 A.2d 15, 19 (Pa. Cmwlth. 1979).

In *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118 (Pa. Cmwlth. 2017), the applicant had sought a special exception to construct a monopole communications tower. The local zoning hearing board denied the application, finding it did not meet the requirement in the ordinance that the proposed use "will not significantly affect the desirable character of an existing residential neighborhood." *Id.* at 1120. The trial court affirmed. After reviewing the other bases for denying the requested zoning relief and concluding they were "unsustainable," the Court concluded "the **protection of aesthetics** and property values **cannot** serve as sufficient bases for the [board's] **denial** of [the a]pplicant's special exception application." *Id.* at 1126 (emphasis added).

Here, the sole basis supporting the denial of the special exception is that the proposed bank did not meet the requirement that it be **"less objectionable** in external effects than the existing nonconforming use, with respect to . . . **[a]ppearance**." (Marple Township Zoning Code § 300-124.C(4) (emphasis added).) While the

Board initially cited other bases for denying the application, common pleas reversed the Board as to each of those bases, including reversal of the Board's determination that the proposed bank was not consistent with the surrounding character of the neighborhood. There has been no appeal or challenge to common pleas' determination related to those other bases; therefore, those bases are not before us. For support that Republic did not demonstrate the proposed change would be less objectionable in terms of external effects with respect to appearance, the Board stated the existing funeral home resembles a single-family dwelling, whereas the proposed bank would be "an all[-]glass modern building, with a 'unique **aesthetic character**.'" (COL ¶¶ 16-17 (emphasis added).) The Board further stated that the proposed bank would be "dramatically different in appearance than the" funeral home. (*Id.* ¶ 17.) Thus, it appears the Board based its decision on aesthetics. However, pursuant to longstanding precedent, "while we recognize the legitimate interest of the Township to advance its aesthetic goals as part of its protection of the general welfare, purely aesthetic judgments are far too subjective to alone carry the burden of showing detriment to the public interest." *White Advert.*, 453 A.2d at 35. Thus, **aesthetics** cannot be the only basis for denying zoning relief. Because there is no other basis for the Board's determination, we reverse common pleas' Order to the extent it affirmed the Board's denial of the application on the basis of appearance.

## IV.   CONCLUSION

Zoning relief cannot be denied on the basis of aesthetics alone, and the only basis that remains for denying Republic its application was that the proposed bank was not "less objectionable in external effects than the existing nonconforming use, with respect to . . . [a]ppearance," (Marple Township Zoning Code § 300-124.C(4)),

12

based on the Board's finding the proposed change would be a "modern building" with "a unique aesthetic character," (COL ¶ 17). It was, therefore, error to deny Republic the zoning relief it requested in the form of a special exception. Accordingly, common pleas' Order is reversed to the extent it affirmed the Board's Decision denying the application on the basis of appearance. The remainder of common pleas' Order was not challenged and is, therefore, affirmed.[7]

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

[7] Given the Court's disposition, it is unnecessary to reach the merits of Republic's other arguments.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Republic First Bank d/b/a  
Republic Bank,            :  
           Appellant      :  
           :  
          v.         :    No. 205 C.D. 2020  
           :  
Marple Township Zoning Hearing    :  
Board and Marple Township      :  

## O R D E R

**NOW**, December 14, 2020, the Order of the Court of Common Pleas of Delaware County (common pleas), entered in the above-captioned matter, is **REVERSED IN PART** and **AFFIRMED IN PART.** The Order is reversed to the extent common pleas affirmed the Decision of the Marple Township Zoning Hearing Board denying the application for a special exception filed by Republic First Bank d/b/a Republic Bank on the basis that the proposed bank was not "less objectionable in external effects than the existing nonconforming use, with respect to . . . [a]ppearance." (Marple Township Zoning Code § 300-124.C(4)). Common pleas' Order is affirmed in all other respects.

_____  
**RENÉE COHN JUBELIRER,** Judge
